# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| LARRY MAYES, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|       v. | )    CAUSE NO.: 2:03-CV-379-PRC |
| | ) |
| CITY OF HAMMOND, INDIANA; FORMER POLICE CHIEF FRANK DUPEY, DETECTIVE SGT. RAYMOND MYSZAK, DETECTIVE MICHAEL SOLAN, and JOHN and JANE DOES 1 through 50, | ) ) ) ) ) |
| | ) |
|    Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on (1) a Motion to Strike Plaintiff's DNA References and Evidence [DE 197], filed by Defendant Detective Raymond Myszak in his individual capacity on May 5, 2006; (2) Defendants' Motion to Strike the Plaintiff's DNA References and Evidence [DE 200], filed by Defendants City of Hammond, Detective Sergeant Robert Townsell, and John and Jane Does 1 through 50 (the "City") on May 8, 2006; and (3) a Motion to Strike the Plaintiff's DNA References and Evidence [DE 206], filed by Defendants Michael Solan and Frank Dupey on May 8, 2006. Mayes filed a joint response on May 9, 2006. On May 16, 2006, Myszak and the City each filed a reply, and on May 17, 2006, Solan and Dupey filed a reply.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

In July 2001, Mayes filed a Petition for Post Conviction Relief, requesting that his conviction be overturned and that physical evidence from the rape of Ms. Jaynes–a vaginal swab and Ms. Jaynes' undergarments, both of which contained sperm–be subject to DNA testing. The State, through Lake County Deputy Prosecuting Attorney Kathleen O'Halloran, answered, agreeing that Mayes had complied with Indiana Code 35-38-7-5. The State and Mayes then entered into a stipulation that the physical evidence should be shipped to Cellmark Diagnostics for DNA testing. Cellmark then analyzed the evidence. The results of the testing were provided by Cellmark to the Indiana State Police, which determined, by comparing the DNA profile from the sperm to the DNA profile of Mayes maintained in the State's official data base of sex offenders, that the DNA profiles did not match and that Mayes was not the contributor of the sperm found in Ms. Jaynes and on her clothing. The State and Mayes then filed in the trial court a Joint Petition for Release, requesting that the court grant the petition and release Mayes from custody. On December 20, 2001, Judge Richard Maroc, the same judge who had presided over the criminal trial of Mayes, granted the petition pursuant to Indiana Code § 35-38-7-19, ordered that the Petition for Post-Conviction Relief be granted, that the convictions of July 28, 1982 be vacated, and that Mayes be released from custody.

Becoming concerned that Defendants may assert challenges to the validity of the DNA testing, Mayes had himself retested.[1] His blood was drawn by a doctor in Chicago who then submitted the blood to Orchid Cellmark. On October 12, 2005, Mayes received from Orchid Cellmark a report indicating that he was "excluded as a potential contributor to the DNA profiles

---

[1] Initially, Mayes moved for the Court to order DNA testing of Mayes under Federal Rule of Civil Procedure 35. The Court denied the motion on the grounds that Mayes could have himself tested.

obtained from the sperm fractions of the vaginal swab and panties." Pl. Br., Exh. I. Mayes immediately sent a copy of the Orchid Cellmark report to Defendants. Mayes advised Defendants that he would seek to introduce the evidence at trial and that a representative of Orchid Cellmark would be called to testify concerning those results. The Defendants did not depose anyone at Orchid Cellmark.

On October 18, 2005, the Court entered a revised scheduling order, setting the deadline for Mayes' expert witness disclosures and reports for January 3, 2006, and the deadline for Defendants' expert witness disclosures and reports for January 31, 2006. By the deadline, Mayes filed expert witness disclosures and reports for Steven J. Lynn, Ph.D. as an expert in the area of hypnosis and for Steve Rothlein in the area of police practices. Mayes did not disclose an expert witness or provide an expert report regarding an expert in the area of DNA evidence, results, or testing.

On April 13, 2006, Mayes filed responses to the Defendants' motions for summary judgment, including a Plaintiff's Statement of Genuine Issues of Material Facts ("Plaintiff's Statement of Facts"). The Defendants identify the following paragraphs of the Plaintiff's Statement of Facts that refer to DNA test results: 1, 2, 6, 89, 117, 121, 141 n. 9, 239, 240, 241 (including n. 11), 243, 244 (including n. 12), 246, 247, and 248. In addition, in his Memorandum of Law in response to Officer Myszak's motion for summary judgment, Mayes argues that "after almost 21 years of imprisonment, with the advent of new technology, he eventually succeeded in having the DNA recovered from Ms. Jaynes test kid. It wasn't his." Pl. Mem. p. 7. Also, in the Plaintiff's Response to Defendant's Motion to Bar Plaintiff's Hypnosis Expert Professor Steven Lynn, Mayes argues that "Defendants have challenged Dr. Lynn's testimony on the basis he is not an expert in DNA. Obviously he is not, and to the extent he made references to the DNA results in this case he was relying on the opinions

of other experts, whom Defendants have not challenged, that Mr. Mayes was not the source of the semen found in Ms. Jaynes' vagina and her clothing." Pl. Resp. to Mot. to Strike Dr. Lynn, p. 10.

## ANALYSIS

In the motions to strike, Defendants ask that the Court strike any reference by Mayes in his various motions and memoranda to results of DNA testing purportedly done on Mayes and that he be barred from referring at trial to DNA testing and testing results. Defendants argue that, although Mayes did not disclose a DNA expert prior to the January 3, 2006 deadline for Plaintiff's expert witness disclosures, Mayes nevertheless relies on facts and allegations interpreting DNA results throughout his motions and briefs. Defendants argue that DNA testing and the interpretation of DNA results are unquestionably areas of scientific knowledge that require expert testimony pursuant to Rule 702 and the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Because Mayes has not tendered and disclosed an expert in the area of DNA science, Defendants argue that Mayes cannot properly present DNA evidence pursuant to Rule 702 and Rule 26(a)(2). Defendants ask the Court to prohibit Mayes from using the various DNA evidence pursuant to Federal Rule of Civil Procedure 37(c)(1), specifically asking the Court to strike the references to DNA evidence and to bar Mayes from mentioning at trial any DNA results.

In response, Mayes argues that he offered a DNA expert–Orchid Cellmark–in October 2005, which tested the DNA evidence in both 2001 and 2005; that the Indiana state court entered a valid and binding order vacating Mayes' conviction on the grounds that DNA testing excluded him as being the source of the semen found in Ms. Jaynes' body and on her clothing; that the Indiana State Police report containing the determination that Mayes' DNA did not match the DNA of the sperm

4

found in Ms. Jaynes' body and on her clothing is admissible under Federal Rule of Evidence 803(8); and that he is entitled to refer to the fact that Mayes was excluded as the source of the semen when questioning witnesses. The Court will consider each basis of admissibility in turn.

### A. Orchid Cellmark–October 2005 Report

Federal Rule of Civil Procedure 26(a)(2) provides:

(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

(C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1).

Fed. R. Civ. P. 26(a)(2).

Federal Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in

>the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

On October 14, 2005, well within the discovery deadlines, Mayes tendered to the Defendants the results of DNA testing from Orchid Cellmark, which replicated the 2001 testing comparing the DNA taken from the physical evidence from the Jaynes rape and a new sample taken from Mayes in 2005, as well as a cover letter. Previously, on October 5, 2005, Mayes had informed the Defendants of the identity of the doctor who would be taking the blood sample and of Orchid Cellmark. Although Defendants were not forthright in the motions to strike by failing to inform the Court of the Orchid Cellmark report and the letters from Mayes' counsel, Mayes nevertheless does not attempt to argue that the report meets the requirements of Rule 26(a)(2) in asserting that Defendants are incorrect that he had failed to name an expert in the area of DNA. The Court finds that Mayes has not met the requirements of Rule 26(a)(2) with respect to the Orchid Cellmark report.

First, the "disclosure" from Mayes in the October 5, 2005 letter does not disclose the "identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705." Rule 26(a)(2)(A). Rather, the letter states that "an expert from Cellmark" is a witness who may testify at the trial of this matter without specifically identifying an individual. Pl. Resp., Exh. H. The October 12, 2005 Laboratory Report from Orchid Cellmark does not identify the expert to be used by Mayes either. Although two names appear at the bottom of that report–Amber G. Moss (Supervisor, Forensics) and Deidra O. Ward (DNA Analyst IV), individuals who reviewed the results and conclusions described in the report–it is not clear who performed the tests for Orchid Cellmark. Pl. Resp., Exh. I. There is also no indication in the Orchid Cellmark report that either

6

of these individuals was being identified as an expert witness for Mayes. Nor does the October 14, 2005 cover letter from Mayes' counsel to Defendants for the October 12, 2005 report identify any expert, again indicating generally that a "representative from Cellmark will be called to testify concerning these results." Pl. Resp., Exh. J.

Second, Rule 26(a)(2)(B), as set forth above, provides explicit requirements for the content of an expert report. None of the documents offered by Mayes provide "a complete statement of all opinions to be expressed and the basis and reasons therefore," "the qualifications of the witness, including a list of all publications authorized by the witness within the preceding ten years," "the compensation to be paid for the study and testimony," and "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Fed. R. Civ. P. 26(a)(2)(B).[2]

As no DNA expert was disclosed prior to the expert disclosure deadline of January 3, 2006, the Court grants the motions to strike as to the report by Orchid Cellmark and all references thereto. The Court strikes footnotes 3 and 12 of the Statement of Material Facts and Exhibits M and QQQ[3] to Mayes Response to the Motion for Summary Judgment. Mayes is also precluded from using or referencing the October 2005 Orchid Cellmark report at trial. *Bevolo v. Carter*, 447 F.3d 979, 981 (7th Cir. 2006); *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998).

---

[2] Mayes did comply with the requirements of Rule 26(a)(2) for the two experts he identified prior to the deadline–Steven Rothlein and Steven J. Lynn.

[3] QQQ is a page from a treatise explaining the significance of secretors and non-secretors in reference to DNA evidence.

**B. Judicial Notice**

Mayes argues that this Court can take judicial notice of the Judgment of the Lake County Superior Court vacating his criminal conviction based on DNA evidence, citing *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996); *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994), and requests that the Court do so. Defendants argue that the Court cannot take judicial notice of the truth of the facts contained within a state court order absent satisfaction of the elements of *res judicata* or *collateral estoppel*, citing *In re Snider Farms, Inc.*, 83 B.R. 977 (Bkrtcy. N.D. Ind. 1988); *Lunding v. Biocatalyst Resources, Inc.*, No. 03 C 696, 2004 WL 547250 (N.D. Ill. Feb. 10, 2004).

Federal Rule of Evidence 201 provides: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A federal court may take judicial notice of state court orders. *See Henson*, 29 F.3d at 284.

"In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite." *U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citing 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5104 at 485 (1977 & Supp. 1994)). "Since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing." *Id*; *see also General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997).

Therefore, for the purposes of summary judgment and trial, the Court takes judicial notice of those parts of the December 20, 2001 Order of Judge Richard Maroc ordering that "the Post-

Conviction Relief filed July 9, 2001, be granted, that the convictions entered July 28, 1982, be vacated, that the victim be notified by the State through the deputy prosecutor of the pendency of the release of Larry Mayes, and that the Indiana Department of Corrections release Larry Mayes from custody." Pl. Resp., Exh. D.

However, the Court does not take judicial notice of the following words in the December 20, 2001 Order: "Based on the DNA testing and analysis, pursuant to I.C. 35-38-7." This statement is not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In addition, this statement is not relevant to Mayes' claims in his Complaint of failure to disclose hypnosis and of improper police investigatory practices regarding photo arrays and regarding the process of in-person identification of the perpetrator by the victim. Even if the DNA reference in that Order is relevant, then it is not admissible pursuant to Federal Rule of Evidence 403 because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" in the absence of expert testimony from either party. Fed. R. Evid. 403.

Similarly, the Court does not take judicial notice of the underlying DNA evidence itself or its validity or the DNA testing results or their validity nor does the Court take judicial notice of any conclusion of innocence or otherwise based on the DNA evidence relied on by Judge Maroc.[4] *See, e.g.*, *Lease Resolution Corp.*, 128 F.3d at 1082, 1082 n. 6 (noting that some courts have not allowed a court to take judicial notice of any adjudicative fact in a court record for the truth of the matter asserted but that "it is conceivable that a finding of fact may satisfy the indisputability requirement") (citing cases); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388-89 (2d Cir.

---

[4] Although Mayes describes Judge Maroc's order as finding him "innocent," no such language or finding is contained within Judge Maroc's order.

9

1992) (recognizing that a "court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"). In other words, the Court does not take judicial notice of the truth of the facts asserted in Mayes' trial proceeding, which could only be done in accordance with the principles of *collateral estoppel*, *res judicata*, or law of the case, as Mayes has not attempted to demonstrate that the elements of either *collateral estoppel* or *res judicata* have been met. *See In re Snider Farms,* 83 B.R. at 987; *Lunding*, 2004 WL 547250, *3.

Rather, the Court simply takes judicial notice of the fact that Judge Maroc vacated Mayes' criminal conviction. *See Jones*, 29 F.3d at 1553 (11th Cir. 1994) (holding that "a court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation") (citing cases); *see also In re Snider Farms,* 83 B.R. at 987 ("Accordingly, the Court takes judicial notice of its Memorandum Opinion and Order of October 19, 1987, finding that the value of the Debtor's property subject to Equitable's lien is $521,265.00.").

Accordingly, the Court grants the motions to strike as to the first sentence of paragraph 1 of the Plaintiff's Statement of Facts and the phrase "Based on the DNA testing and analysis, pursuant to I.C. 35-38-7" of Exhibit D to the Plaintiff's Statement of Facts. At trial, the parties are prohibited from attempting to introduce or referring to this language in the Order, and the parties are prohibited from introducing testimony regarding the basis of the December 20, 2001 vacatur.

## C. Police Report - Federal Rule of Evidence 803(8)

Mayes argues that the December 19, 2001 Indiana State Police Report written by Paul Misner, excluding Mayes as the source of the DNA found in the physical evidence from the Jaynes rape, is an official report admissible pursuant to Federal Rule of Evidence 803(8).

Rule 803(8)(C) provides that "records, reports, statements, or data compilations, in any form of public offices or agencies setting forth . . . in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness," are not excluded by the hearsay rule. Fed. R. Evid. 803(8)(C). The Defendants do not dispute that the report qualifies as a report of "factual findings resulting from an investigation made pursuant to authority granted by law." The Indiana State Police were investigating the Mayes case pursuant to authority granted by law and created a report that contained factual findings excluding Mayes as the source of the semen found on the vaginal swab of Jaynes. This report is presumed admissible under Rule 803(8), unless Defendants demonstrate its untrustworthiness. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 161-70 (1988).

The burden to show lack of trustworthiness is on the party opposing admission of the evidence. *Maxwell v. Ford Motor Co.*, 160 Fed. Appx. 420, 423 (5th Cir. 2005) (citing *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991)); *U.S. v. Lewis*, 27 Fed. Appx. 768, 769 (9th Cir. 2001) (citing *Johnson v. City of Pleasanton*, 982 F.2d 350, 352 (9th Cir.1992)); *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000) (citing *Ariza v. City of New York*, 139 F.3d 132, 134 (2d Cir. 1998); *Klein v. Vanek*, 86 F. Supp. 2d 812, 820 (N.D. Ill. 2000). To determine whether the report lacks trustworthiness, the Court considers, among other factors, the timeliness of the

investigation, the special skill or experience of the official, whether a hearing was held, and possible motivational problems. *See Miller v. Field*, 35 F.3d 1088, 1090 (6th Cir. 1994); Fed. R. Evid. 803, 1972 Advisory Committee Notes. Although the Defendants do not denominate their argument as one of lack of trustworthiness, Defendants argue that the information related to DNA results contained within the report requires expert testimony under Rule 702 in order to be admissible at trial.

"Rule 803(8) does not on its face require that the one who undertakes the investigation and authors the report be qualified as an expert before the report becomes admissible . . . ." *Clark v. Clabaugh*, 20 F.3d 1290, 1294-95 (3d Cir. 1994). In *Beech Aircraft*, the Supreme Court extended the application of the Rule 803(8) hearsay exception to include portions of otherwise admissible (under Rule 803(8)) investigatory reports which contain opinions and conclusions, as long as the conclusions satisfy the Rule's trustworthiness requirement. 488 U.S. at 169; *see also U.S. v. Romo*, 914 F.2d 889, 896 (7th Cir. 1990). However, as to the factual findings and conclusions within the report, "the district court's [*Daubert*] 'gatekeeper' role is not abrogated simply because the evidence falls under Rule 803(8)(C)." *Desrosiers v. Flight Int'l of Florida Inc.*, 156 F.3d 952, 962 (9th Cir. 1998) (holding district court did not abuse discretion in excluding factual findings of government report as untrustworthy where opinions were made by a non-expert with no formal training).

The December 19, 2001 Indiana State Police report provides, in relevant part:

Per your request, I have compared the DNA profile determined by Cellmark Corporation from the sperm cell fraction of the vaginal swab from Lisa Jaynes to the convicted offender DNA profiles of Larry Mayes, DOC #25169 and James Hill, DOC#23861 in the Indiana DNA Database. Neither the DNA profile from Larry Mayes nor James Hill matched the DNA profile from the sperm cell fraction from the vaginal swab of Lisa Jaynes.

Pl. Resp., Exh. E. It is apparent that Mr. Misner's conclusions in his report that the sample of Mayes' DNA contained within the database does not match the DNA profile determined by Cellmark Corporation is based on his firsthand knowledge obtained during the comparison of the samples performed as part of his duties at the request of Deputy Prosecutor O'Halloran. The Defendants, who bear the burden of demonstrating lack of trustworthiness, have offered no evidence that Mr. Misner's conclusions based on his testing of the evidence lacks trustworthiness.

However, the data upon which Mr. Misner based his opinion–the data compiled by Cellmark and the samples taken from the physical evidence from the Jaynes' rape–is itself not admissible, as held by the Court above, because Mayes has not disclosed a DNA expert. Nor does it appear that Mr. Misner has any personal knowledge as to the underlying data. Therefore, Defendants would be severely limited in their ability to effectively cross examine Mr. Misner as to the report and underlying data. Moreover, Mr. Misner has not been offered as a DNA expert under the standards of Rule 26(a)(2), as set forth above. As expert testimony is necessary for the introduction of evidence regarding DNA testing and analysis and Mayes has not offered a DNA expert, the Court finds that the December 19, 2001 Indiana State Police report and its attachments are not admissible. Nor are the enclosures attached to the report admissible.

In addition, admission of the Indiana Police Report should be excluded because its probative value is substantially outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Because the letter begins, "I have compared," Mr. Misner's statements therein cloak his determinations with an authority that may unfairly imply to the jury that Mayes is innocent of the rape without the benefit of understanding all of the relevant DNA evidence through a DNA expert. Any limiting instruction given to the jury by the Court under

Federal Rule of Evidence 105 would likely confuse the jury because of the strong implication of innocence implied by the fact that Mr. Misner found that the sperm cell fraction of the vaginal swab from Jaynes did not match the convicted offender DNA profile of Mayes. For the same reasons, in the absence of expert testimony from either party, the report may mislead the jury to believe that the report is itself conclusive proof of Mayes' innocence. Finally, Defendants, having received no DNA expert report from Mayes, did not disclose a DNA expert, and they would be unfairly prejudiced by the admission of the letter by not having an expert available to refute the letter.

Accordingly, the Court grants the motion to strike paragraph 1, except for the last sentence ("The judgment of conviction was vacated, and he was released from prison."), of the Plaintiff's Statement of Facts and Exhibit C thereto. At trial, the parties are prohibited from attempting to introduce or referring to the Indiana State Police Report of Paul Misner, and they are prohibited from presenting testimony regarding this document whether directly or indirectly.

### D. Other References to DNA

Many of the references to DNA found throughout Mayes' Statement of Material Facts and objected to by Defendants form the basis of deposition questions or form the basis of opinions given in deposition. In keeping with the rulings of this Order, all references to DNA testing or the testing results are stricken from the deposition testimony pursuant to Federal Rule of Evidence 403 because their "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.

Accordingly, the Court grants the Motions to Strike as to the phrase "During the DNA testing process" of paragraph ¶ 2; ¶ 6; the phrase "to advise her that DNA testing was being conducted in

14

the case" in ¶ 89; the second sentence of footnote 9; ¶ 239; ¶ 240; ¶ 241; footnote 11; the last sentence of ¶ 243; ¶ 244; footnote 12; the phrase "despite the presence of new DNA evidence" in ¶ 246; ¶ 247; ¶ 248.

### E. Dr. Lynn's Testimony at Paragraphs 117 and 121

The motions as to paragraphs 117 and 121 of the Plaintiff's Statement of Facts, which each contain an excerpt from Dr. Lynn's deposition testimony, are denied as moot on the basis that the subject of the testimony in those paragraphs was held to be inadmissible in these proceedings in a contemporaneous order entered by this Court on Defendants' Motion *In Limine* as to Stephen Jay Lynn, Ph.D.

### CONCLUSION

Based on the foregoing, the Court now **GRANTS in part** and **DENIES in part** (1) the Motion to Strike Plaintiff's DNA References and Evidence [DE 197], filed by Defendant Detective Raymond Myszak in his individual capacity on May 5, 2006; (2) Defendants' Motion to Strike the Plaintiff's DNA References and Evidence [DE 200]; and (3) the Motion to Strike the Plaintiff's DNA References and Evidence [DE 206].

The Court now **STRIKES** all references to DNA evidence, the DNA results, or the DNA testing contained in Plaintiff's response briefs in opposition to the Motions for Summary Judgment and **STRIKES** the following paragraphs and footnotes of the Plaintiff's Statement of Material Facts offered in support of his response brief in opposition to the Motions for Summary Judgment: ¶ 1, except for the last sentence; the first sentence of ¶ 2; ¶ 6; the phrase "to advise her that DNA testing

15

was being conducted in the case" in ¶ 89; ¶ 239; ¶ 240; ¶ 241; the last sentence of ¶ 243; ¶ 244; the phrase "despite the presence of new DNA evidence" in ¶ 246; ¶ 247; ¶ 248.; footnote 3; the second sentence of footnote 9; footnote 11; and footnote 12. The Court retains the right to strike any further references to DNA in the Statement of Facts not herein listed. The Court also **STRIKES** Exhibit C, the phrase "Based on the DNA testing and analysis, pursuant to I.C. 35-38-7" of Exhibit D, Exhibit M, and Exhibit QQQ to the Plaintiff's response briefs in opposition to the Motions for Summary Judgment and **ORDERS** that these exhibits or portions of exhibits are not admissible at trial.

The Court **ORDERS** that the parties are prohibited from referring to, soliciting testimony regarding, or attempting to introduce evidence of the DNA testing, DNA results, deponent or witness testimony related to the DNA testing and/or results, the Indiana State Police Report, the basis of Judge Maroc's December 20, 2001 Order vacating Mayes' sentences, and any other information relating to the DNA testing and results in this matter.

SO ORDERED this day 21st day of June, 2006.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record