# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| LARRY MAYES, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO.: 2:03-CV-379-PRC |
| ) | |
| CITY OF HAMMOND, INDIANA, et al., ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Bar Defendants' Police Practices Expert Michael Fleming [DE 120], filed by Plaintiff Larry Mayes on March 14, 2006. Defendant City of Hammond ("City") filed a response on March 29, 2006, and Mayes filed a reply on April 21, 2006.

On February 14, 2006, the City disclosed the report of Michael Fleming to Mayes pursuant to Federal Rule of Civil Procedure 26(a)(2), offering Fleming as a police practices expert. Fleming is a retired detective from the Chicago Police Department ("CPD"). In his report, Fleming expressed the following opinions:

> [1] The identification of Larry Mayes on October 6, 1980 was non-suggestive and a product of acceptable police practice.
>
> [2] Use of photo arrays as described by Lisa Jaynes on October 6, 1980 is standard and customary police practice.
>
> [3] The testimony of Lisa Jaynes relating to her identification on October 6, 1980 was sufficient probable cause to arrest Larry Mayes.
>
> [4] At the time of trial in 1982 neither the prosecutor Thomas Vanes, nor Mayes' defense attorney Richard Wolter attached any significance to the absence of a report from Townsell of the October 6, 1980 identification report.
>
> [5] From the information supplied to me, I see no evidence that there was a custom or practice on the part of the Hammond Police Department to use hypnosis as a means of gaining evidence. Nor do I see any evidence that it was the custom or

> practice of the Hammond Police Department to withhold exculpatory evidence.
>
> [6] Lisa Jaynes Johnson's current sworn testimony regarding the facts of the case is basically the same in that she remembers identifying the offenders in photo arrays, in lineups, in court. She is still of the opinion that she identified the men who committed the Armed Robbery, Kidnapping and Rape to her on October 5, 1980. Even after hearing the apparent conflicting DNA evidence she is still of the opinion Mayes and Hill are guilty of these crimes committed against her. After 25 some years her recollection is now that she identified the subjects after the relaxation session. Lisa Jaynes Johnson in a recent deposition agrees that her sworn statements in the early 1980s would be more accurate than her current recollection.
>
> [7] There was nothing about the use of the word "tentative" by Robert Townsell, which would have resulted in a disclosure to the defense attorneys. Lisa Jaynes was the victim and identified Larry Mayes and her identification was positive. Whatever Townsell meant by "tentative" if he even said it, is not exculpatory evidence, I and I am sure my fellow Detectives on the Chicago Police Department would not have felt a need to disclose this to the defense. It is very important to note that Lisa Jaynes was never tentative in her identification.

Pl. Br., Exh. 1. In preparing his expert report, Fleming reviewed Mayes' First Amended Complaint; the case of *Mayes v. State of Indiana*, 467 N.E.2d 1189 (Ind. 1984); the record of proceedings for *Indiana v. Mayes*, Cause No. 1CR-6-181-17; the transcript of the jury trial for *Indiana v. Mayes*; the depositions of Lisa Jaynes (1981), Raymond Myszak (1982), Robert Townsell (1982), Mike McPhillips (1982), Charles Mak (1982), John Ratajczak (1982), James Fedorchak (1981), Lisa Jaynes Johnson (2004), Phil Jaynes (2005), Michael Solan (30(b)(6)) (2005), Michael Solan (2005); Myszak (Parts I and II) (2005), Michael McPhillips (2005), Charles Mak (2005), Frank Dupey (2005), Thomas Vanes (Part I) (2005), Richard Wolter, Jr. (2005), Steve Ridgley (2005), Thomas Vanes (Part II) (2006), Brian Miller (2006), Lisa Jaynes (2004), Larry Mayes (2005), James Hill (2005); Hammond Police Department Reports and Notes; St. Margaret's hospital file on Jaynes; Lake County Sheriff's Reports; Bertha Allen's trial testimony in the Mayes and Hill cases; "Monthly Return of Offenses Known to the Police" for January through December 1979 and 1980; Mr. Eller's

handwritten statement; Report of Robert L. Kuranz, defendants' expert who examined Mr. Eller's statement; affidavit of R. Edward Geiselman, Ph.D., defendants' expert; report of Erika L. Lijedahl, Psy.D., defendants' expert; report of Arthur A. Liedecker, defendants' expert; Affidavit of Steven J. Lynn, Ph.D., plaintiff's expert; trial transcript of *State of Indiana v. James Hill, Jr.* (1982); Mayes' prior criminal record submitted at his sentencing hearing; all information on Mayes' prior criminal record from prosecutor's file; and information from Raymond Myszak's hypnosis seminar.

In the interests of economy, the Court hereby incorporates the Factual Background set forth in the Court's July 5, 2006 Order ruling on motions for summary judgment.

In his motion, Mayes argues that Fleming is not qualified as an expert by knowledge, skill, experience, training, or education under Federal Rule of Evidence 702 to testify to the subject matters for which he is proffered as an expert witness because the opinions are not "based upon sufficient facts or data," are not "the product of reliable principles and methods," and do not result from the reliable application of such "principles and methods" as required by Rule 702. More specifically, Mayes argues that Fleming did not consult the policies of any other police department, any model policies promulgated by national or international policing organizations, or any authoritative treatises in the field; Fleming lacks the requisite knowledge to be qualified as an expert even on CPD policies, procedures, and training on photographic identifications and *Brady* obligations; Fleming did not consult any of the CPDs policies, procedures, and training on these subjects in preparing his report; Fleming's personal experiences are inconsistent with prevailing standards in the field; there is no "fit" between Fleming's purported data and his conclusions regarding the October 6, 1980 photo array; Fleming's third, fourth, and sixth opinions are speculative; and Fleming's opinions concerning patterns and practices of hypnosis and the

3

withholding of exculpatory evidence in the Hammond Police Department are baseless.

The admissibility of expert testimony in federal court is governed by Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Court acts as a gatekeeper in determining whether so-called expert testimony meets the criteria established in *Daubert*. 509 U.S. at 589. In performing this function, the Court is to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* However, "[t]he rejection of expert testimony is the exception rather than the rule, and 'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1150 (N.D. Ill. 2001) (quoting Fed. R. Evid. 702 advisory committee's note).

To determine reliability, the Court must ascertain whether the expert is qualified in the relevant field and whether the reasoning or methodology is valid. *Id.*, 509 U.S. at 592-93; *see also United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005). "While extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Smith*, 215 F.3d at 718 (internal quotation marks and citations omitted) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999)). "Thus, a court should consider a proposed

4

expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Id.*, 215 F.3d at 718; *see also Parra*, 402 F.3d at 758; *United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002) (observing that the Advisory Committee notes to Rule 702 specifically provide that "[i]n certain fields, experience is the predominant, if not the sole, basis for a great deal of reliable expert testimony").[1]

Fleming served as a detective with the CPD from 1973 to 1996. During his 23 years as a detective, he participated in approximately 400 rape investigations, approximately 1200 homicide investigations, approximately 1000 robbery investigations, and approximately 100 drug enforcement investigations. During this time, he received 25 commendations from the CPD in connection with investigating rapes, homicides, robberies, and other serious crimes. He attended police tactics training sessions throughout his 27 years of service. Fleming gained his knowledge of documenting criminal investigations and disclosing exculpatory impeachment evidence through his on the job experience of investigating serious crimes, working with senior officers, and contacting the State's attorney office with dilemmas. The Court finds that Fleming's testimony qualifies as expert testimony under Rule 702 and *Daubert* and its progeny based on his extensive and specialized personal experience in the field of police investigative work, specifically rape investigations. In considering whether to permit the expert testimony of a police officer, the court in *Trevino v. City of Rock Island Police Deparment* explained that

> it is not uncommon for experienced police officers to appear and give expert

---

[1] The Court notes that, in its response brief, the City incorrectly cites *Poe v. Leonard*, 282 F.3d 123, 131 (2d Cir. 2002) as a Seventh Circuit case in its brief. In addition, the City incorrectly attributes a procedural summary of the district court proceedings as the holding of the Second Circuit relating to the standard for admissibility of a police practices expert.

5

> testimony based on specialized knowledge gained through their years on the job, such testimony is generally derived from the frame of reference that these officers develop as a result of their repeated involvement in the situations forming the basis for their testimony.

91 F. Supp. 2d 1204, 1206 (C.D. Ill. 2000). However, in contrast with this expert police testimony based on years of repeated involvement with cases of a similar nature, the *Trevino* court concluded that the proffered expert, an officer with monocular vision who was being offered as an expert on being a police officer with monocular vision, was drawing only on his own personal experience as a monocular visioned person, and the court excluded his testimony. In contrast, Fleming, like police officers who are involved in numerous drug investigations over time, *see United States v. Romero*, 189 F.3d 576, 584 (7th Cir. 1999), is uniquely qualified to offer expert opinion testimony on the investigation of serious crimes, including rapes. In preparing his report, Fleming has reviewed the investigation of the HPD regarding the Lisa Jaynes rape and robbery and has rendered opinions regarding the procedures utilized by the police in conducting the investigation.

With the exception of the argument against Fleming's "sixth opinion" addressed below, Mayes' arguments and objections go more to the credibility and weight of Fleming's testimony than to the admissibility of the testimony under rule 702. While it is true that in executing its gate-keeping function, the Court must focus on an expert's methodology, "[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." *Smith*, 215 F.3d at 718 (citing *Daubert*, 509 U.S. at 595; *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 587 (7th Cir. 2000)). These objections and arguments may be pressed by Mayes at trial during the examination and cross examination of Fleming. *See Daubert*, 509 U.S. at 595 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Finally, Fleming is entitled to base his opinions on assumptions that are based on admissible evidence of record. *See Walker*, 208 F.3d at 589; *Richman v. Sheahan*, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006). However, "the credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury-determining the credibility of witnesses." *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999); *see also Goodwin v. MTD Prods, Inc.*, 232 F.3d 600, 609 (7th Cir. 2000). Therefore, Fleming's "sixth opinion" that "Lisa Jaynes Johnson's current sworn testimony regarding the facts of the case is basically the same in that she remembers identifying the offenders in photo arrays, in lineups, in court" is stricken. The evidence relied on to render this opinion is a comparison by Fleming of Ms. Jaynes' statements during the course of the investigation and trial in the early 1980s that she made a positive identification of Mayes on October 6, 1980, of the fact that she was still convinced in 2004 that Mayes was guilty of the crimes committed against her, of her statement in her 2004 civil deposition that she did not identify her attacker until after the hypnosis session that occurred in mid to late October 1980, and of her agreement in her 2004 civil deposition that her sworn statement in the early 1980s would be more accurate than her current recollection. The inference drawn by Fleming regarding the meaning and veracity of Ms. Jaynes' statements in 1980 and 2004 go to her credibility as a witness, a determination left to the jury. Accordingly, the Court strikes the paragraph containing Fleming's "sixth opinion" in its entirety. In addition, the "sixth opinion" references DNA evidence, and on June 21, 2006, the Court ordered that the parties are prohibited from referring to, soliciting testimony regarding, or attempting to introduce evidence of the DNA testing and DNA

7

results.

Based on the foregoing, the Court now **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Bar Defendants' Police Practices Expert Michael Fleming [DE 120]. The Court grants the motion to the extent that the Court strikes Fleming's "sixth opinion" and denies the motion in all other respects.

So ORDERED this 17th day of July, 2006.

s/ Paul R Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record