**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| LARRY MAYES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:03-CV-379-PRC |
| ) | |
| CITY OF HAMMOND, INDIANA, and ) | |
| DETECTIVE MICHAEL SOLAN, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Reconsideration of the Court's June 21, 2006 Opinion and Order [DE 245], filed by Plaintiff Larry Mayes on June 29, 2006, and Plaintiff's Motion for Reconsideration of the Court's June 21, 2006 Opinion and Order [DE 247], filed by Mayes on June 29, 2006. On July 10, 2006, a Joint Response was filed by Defendants City of Hammond and Michael Solan. Defendant Myszak filed a Response incorporating the arguments of the Joint Response on July 10, 2006. On July l3, 2006, Mayes filed a Reply. As set forth below, the Court grants in part and denies in part the instant motion for reconsideration.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

In July 2001, Mayes filed a Petition for Post Conviction Relief, requesting that his conviction be overturned and that physical evidence from the rape of Ms. Jaynes–a vaginal swab and Ms. Jaynes' undergarments, both of which contained sperm–be subject to DNA testing. The State, through Lake County Deputy Prosecuting Attorney Kathleen O'Halloran, answered, agreeing that

---

[1] This background is taken largely from the Court's June 21, 2006 Opinion and Order.

Mayes had complied with Indiana Code § 35-38-7-5. The State and Mayes entered into a stipulation that the physical evidence should be shipped to Cellmark Diagnostics for DNA testing. Cellmark then analyzed the evidence. The results of the testing were provided by Cellmark to the Indiana State Police, which determined, by comparing the DNA profile from the sperm to the DNA profile of Mayes maintained in the State's official database of sex offenders, that the DNA profiles did not match and that Mayes was not the contributor of the sperm found in Ms. Jaynes and on her clothing. The State and Mayes then filed in the trial court a Joint Petition for Release, requesting that the court grant the petition and release Mayes from custody. On December 20, 2001, Judge Richard Maroc, the same judge who had presided over the criminal trial of Mayes, granted the petition pursuant to Indiana Code § 35-38-7-19 and ordered that the Petition for Post-Conviction Relief be granted, that the convictions of July 28, 1982 be vacated, and that Mayes be released from custody.

Becoming concerned that Defendants may assert challenges to the validity of the DNA testing based on an argument that the sample for Mayes in the State database may not have been his, Mayes had himself retested. His blood was drawn by a doctor in Chicago who then submitted the blood to Orchid Cellmark. On October 12, 2005, Mayes received from Orchid Cellmark a report indicating that he was "excluded as a potential contributor to the DNA profiles obtained from the sperm fractions of the vaginal swab and panties." Pl. Br., Exh. I. Mayes immediately sent a copy of the Orchid Cellmark report to Defendants. Mayes advised Defendants that he would seek to introduce the evidence at trial and that a representative of Orchid Cellmark would be called to testify concerning those results. Defendants did not depose anyone at Orchid Cellmark.

On October 18, 2005, the Court entered a revised scheduling order, setting the deadline for Mayes' expert witness disclosures and reports for January 3, 2006, and the deadline for Defendants'

2

expert witness disclosures and reports for January 31, 2006. By the deadline, Mayes filed expert witness disclosures and reports for Steven J. Lynn, Ph.D. as an expert in the area of hypnosis and for Steve Rothlein in the area of police practices. Mayes did not disclose an expert witness or provide an expert report regarding an expert in the area of DNA evidence, results, or testing.

On April 13, 2006, Mayes filed responses to the Defendants' motions for summary judgment, including a Plaintiff's Statement of Genuine Issues of Material Facts. On May 5, 2006, Defendants filed a Motion to Strike references to DNA evidence, asking the Court to strike all references to DNA evidence relied on by Mayes in his response in opposition to Defendants' motions for summary judgment and to bar all such evidence from trial. On June 21, 2006, the Court granted the motion in its entirety, striking the DNA references found in Mayes' designation of evidence in support of his response to the motions for summary judgment and also precluding the parties from attempting to introduce this evidence or soliciting testimony regarding DNA evidence at trial. It is this ruling Mayes now asks the Court to reconsider.

**ANALYSIS**

Federal Rule of Civil Procedure 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b). The term "judgment" as used in Rule 54(b) "includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). Motions to reconsider an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e) and serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665-66 (N.D. Ill.1982), *aff'd*,736 F.2d 388 (7th Cir. 1984) (citation and footnote omitted)), *amended by*, 835 F.2d 710 (7th Cir. 1987); *Publishers Resource Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quotation omitted); *see also In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 794 F. Supp. 261, 267 (N.D. Ill. 1992) ("Motions to reconsider are not at the disposal of parties who want to 'rehash' old arguments."); *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). A motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Accordingly, "motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling." *Zurich Capital Markets Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) (citing *Schartle v. Motorola, Inc.*, No. 93 C 5508, 1994 WL 323281 at *1 (N.D. Ill. June 24, 1994)).

In the original motion to strike, Defendants argued that, although Mayes did not disclose a DNA expert prior to the January 3, 2006 deadline, Mayes nevertheless relies on facts and allegations interpreting DNA results throughout his motions and briefs. Defendants argued that DNA testing

4

and the interpretation of DNA results are unquestionably areas of scientific knowledge that require expert testimony pursuant to Rule 702 and the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Because Mayes had not tendered and disclosed an expert in the area of DNA science, Defendants argue that Mayes cannot properly present DNA evidence pursuant to Rule 702 and Rule 26(a)(2).  Defendants asked the Court to prohibit Mayes from using the various DNA evidence pursuant to Federal Rule of Civil Procedure 37(c)(1), specifically asking the Court to strike the references to DNA evidence and to bar Mayes from mentioning any DNA results at trial.

In response, Mayes argued that he offered a DNA expert–Orchid Cellmark–in October 2005, which had tested the DNA evidence in both 2001 and 2005; that the Indiana state court entered a valid and binding order vacating Mayes' conviction on the grounds that DNA testing excluded him as being the source of the semen found in Ms. Jaynes' body and on her clothing, asking the Court to take judicial notice of that order; that the 2001 Indiana State Police report containing the determination that Mayes' DNA did not match the DNA of the sperm found in Ms. Jaynes' body and on her clothing is admissible under Federal Rule of Evidence 803(8); and that Mayes is entitled to refer to the fact that he was excluded as the source of the semen when questioning witnesses.

In its June 21, 2006 Order, the Court excluded three categories of DNA evidence: (1) the 2005 Cellmark Orchid DNA test results on the basis that Mayes had failed to provide expert disclosures under Rule 26(a)(2); (2) the 2001 report from the Indiana State Police containing the results of the original DNA comparison on the basis that expert testimony was needed to admit the data contained within and underlying the report; and (3) the phrase in Judge Maroc's 2001 order

5

vacating Mayes' criminal convictions: "Based on the DNA testing and analysis, pursuant to I.C. 35-38-7."

The Court will now address the motion to reconsideration as to each holding.

### A. 2005 DNA Testing and Rule 26(a)(2)

In October 2005, Mayes, having hired Orchid Cellmark to conduct a DNA test for the purposes of this litigation, received results from the test confirming the 2001 report that his DNA did not match that of the semen collected from Ms. Jaynes and her clothing. However, Mayes never disclosed anyone from Orchid Cellmark as an expert pursuant Federal Rule of 26(a)(2), which provides:

> (A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.
>
> (B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
>
> (C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1).

Fed. R. Civ. P. 26(a)(2).  In addition, Federal Rule of Civil Procedure 37(c) provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. P. 37(c)(1).

"The determination of whether a failure is harmless or justified is left to the broad discretion of the district court, and [t]he trial court need not make explicit findings regarding a justification or the harmlessness of the Rule 26 violation." *Westefer v. Snyder*, 422 F.3d 570, 584 n.21 (7th Cir. 2005) (*David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).  However, a court making this determination should be guided by the following factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.*

To clarify its June 21, 2006 Order, the Court finds that Mayes' failure to designate an expert in accordance with the strictures of Rule 26(a)(2) prior to the January 3, 2006 deadline was "without substantial justification" and was not "harmless."  *See Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000).  Throughout this litigation, the Court has required strict adherence to deadlines, granting requested extensions of certain deadlines when justified by representations of the parties.  In this instance, Mayes misapprehended the need to disclose an expert in order to attempt to admit the 2005 Orchid Cellmark report, regardless of Mayes' perception of the admissibility of the 2001 testing

7

under Rule 803(8) and Judge Maroc's order by judicial notice, and, as a result, his failure to disclose an expert for the 2005 report under Rule 26(a)(2) was not substantially justified. Nor is there a "substantial compliance" element to Rule 26(a)(2) that would render the disclosures made by Mayes to Defendants in October 2005 compliant with the Rule. *See Sherrod*, 223 F.3d at 613 (declining plaintiff's suggestion that the court graft a "substantially complied" standard onto the requirements of Rule 26(a)(2)(B)) (citing *Salgado v. General Motors Corp.*, 150 F.3d 735, 739 (7th Cir. 1998)).

Also, by Mayes not disclosing an expert by the deadline in accordance with the rules, Defendants were not on notice that they should similarly retain an expert in response. Although Mayes suggests that Defendants could have alerted him to any deficiencies in his disclosure of the 2005 Orchid Cellmark report, such is not Defendants' burden. Nor were Defendants required to guess at or anticipate Mayes' intentions related to the October 2005 report and based on the disclosures made by Mayes to Defendants. As a result, Defendants did not retain a DNA expert in anticipation of both dispositive motion practice and trial. Once Mayes responded to Defendants' motions for summary judgment on April 13, 2006, relying on DNA evidence, including the October 2005 report, Defendants knew for certain that Mayes intended to rely on the October 2005 DNA evidence without the benefit of an expert and filed the motion to strike. At that stage of the litigation, and even more so now, days from trial, Defendants are prejudiced in their ability to prepare for trial by not having retained an expert witness to respond to Mayes' evidence. To ask Defendants now to conduct the necessary additional expert discovery in addition to preparing for a substantial trial, even in light of Mayes' offer to pay for expedited expert discovery for Defendants and to decline deposing any such expert, is not harmless.

8

Upon reconsideration of its ruling regarding the October 2005 Orchid Cellmark report, the Court's ruling remains unchanged. Mayes will not be permitted to offer a DNA expert at trial, and, thus, may not attempt to offer the October 2005 Orchid Cellmark DNA report into evidence at trial, may not refer to the report or testing at trial, and may not solicit testimony related to this report at trial. Although exclusion of evidence may be an extreme sanction for a failure to comply with Rule 26(a)(2), the exclusion of the October 2005 Orchid Cellmark report in this case is not of the variety that automatically leads to the dismissal of a case, which the Seventh Circuit has found to be reversible error. *See, e.g., Sherrod*, 223 F.3d at 612; *Salgado*, 150 F.3d at 739. As set forth below, Mayes will be able to attempt to introduce the 2001 Police Report and Judge Maroc's order in its entirety to demonstrate his innocence. Mayes will not suffer the "overwhelming" prejudice he claims in his motion for reconsideration.

### B. 2001 Indiana State Police Report and Rule 803(8)(C)

The December 19, 2001 Indiana State Police report provides, in relevant part:

> Per your request, I have compared the DNA profile determined by Cellmark Corporation from the sperm cell fraction of the vaginal swab from Lisa Jaynes to the convicted offender DNA profiles of Larry Mayes, DOC #25169 and James Hill, DOC#23861 in the Indiana DNA Database. Neither the DNA profile from Larry Mayes nor James Hill matched the DNA profile from the sperm cell fraction from the vaginal swab of Lisa Jaynes.

Pl. Resp., Exh. E. In contrast with the 2005 Orchid Cellmark report, which was produced by experts retained by Mayes for the purposes of this litigation, the 2001 Indiana State Police Report by Misner ("2001 Police Report") and the underlying tests were not by experts retained in this case. *See* Fed. R. Civ. P. 26(a)(2)(B). Therefore, the basis for Defendants' argument to exclude the 2001 Police Report cannot be Rule 37(c), as it was for the 2005 report, but must rely on Federal Rule of

9

Evidence 702. In response to the original motion to strike, Mayes asserted that the 2001 Police Report was admissible under Federal Rule of Evidence 803(8)(C), which provides:

> Rule 803(8)(C) provides that "records, reports, statements, or data compilations, in any form of public offices or agencies setting forth . . . in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness," are not excluded by the hearsay rule.

Fed. R. Evid. 803(8)(C). A report offered under Rule 803(8) is deemed admissible unless the party opposing its admission demonstrates that the report lacks trustworthiness. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 161-70 (1988); *Klein v. Vanek*, 86 F. Supp. 2d 812, 820 (N.D. Ill. 2000). To determine whether the report lacks trustworthiness, the Court considers, among other factors, the timeliness of the investigation, the special skill or experience of the official, whether a hearing was held, and possible motivational problems. *See Miller v. Field*, 35 F.3d 1088, 1090 (6th Cir. 1994); Fed. R. Evid. 803, 1972 Advisory Committee Notes. Rule 803(8) does not operate only as to "first-level hearsay," as "[n]othing in either the test or history of Rule 803(8) supports an approach that would make the rule essentially useless–for the bureaucrat who fills out a governmental form usually incorporates information furnished by others." *In the Matter of Oil Spill by Amoco Cadiz Off the Coast of France*, 954 F.2d 1279, 1308 (7th Cir. 1992). "[T]he one who undertakes the investigation and authors the report [need not] be qualified as an expert before the report becomes admissible." *Clark v. Clabaugh*, 20 F.3d 1290, 1294 (3d Cir. 1994). Rather, the party opposing the report must first demonstrate its untrustworthiness. *Id.* at 1294-95; *Desrosiers v. Flight Int'l of Florida, Inc.*, 156 F.3d 952, 962 (9th Cir. 1998).

As an initial matter, the 2001 Police Report is not hearsay under Rule 803(8) as it is a report setting forth "factual findings resulting from an investigation made pursuant to authority granted by

law." The Court finds that the report appears trustworthy on its face. The burden thus shifts to Defendants to demonstrate that the report lacks trustworthiness such that it should be inadmissible. In the June 21, 2006 Order, the Court misapprehended Defendants' argument regarding the need for an expert to admit DNA evidence as Defendants' assertion that the 2001 Police Report was untrustworthy. Upon reconsideration, the Court finds that Defendants have not discharged their burden of establishing untrustworthiness. Indeed, other than generally asserting that a DNA expert is required for the admission of DNA evidence and reiterating *Mayes*' concern in 2005 that Defendants may challenge the source of Mayes' blood utilized in the 2001 testing and report, Defendants *themselves* have not asserted any basis for questioning the validity of the 2001 testing or the underlying data. In neither the reply in support of the motion to strike nor the response in opposition to the instant motion for reconsideration have the Defendants stated that they question the source of Mayes' blood in the 2001 testing or that they have any other basis, other than a hypothetical objection, to question the validity, accuracy, or reliability of the 2001 testing or its underlying data.[2] Notably, Solan, although not a DNA expert, as the City of Hammond's designated Rule 30(b)(6) expert, testified in his deposition that there was no basis for questioning the validity of the 2001 DNA evidence, including whether or not the blood used for the 2001 test was actually Mayes'. Solan has final authority as captain of detectives concerning the reinvestigation of the Jaynes case and the decision whether or not to reopen the case.

---

[2] In his reply brief in support of the original motion to strike, Defendant Myszak cites *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1018 (7th Cir. 2000), for its holdings that of evidence admissible under Rule 803(8)(C) may still be subject to exclusion on other grounds, "such as relevancy" and that trial judges are not shackled with a rule of per se admissibility." However, the bases for exclusion asserted by Defendant Myszak in his reply brief was Rule 702 and Rule 26(a)(2), which in fact go right back to the determination of trustworthiness of the underlying report and are not a separate analysis such as relevancy addressed by the court in *Cooper*.

11

In contrast, Mayes, citing *Beech*, has suggested various facts that demonstrate the trustworthiness of the 2001 report: Misner, as supervisor of the Indiana State DNA Database, is qualified to assess, in the context of his own investigation, the reliability of the Cellmark DNA profile from the rape kit; the Indiana State Police Crime Laboratory is the very laboratory that the Hammond Police Department relied on in all its investigations, including the 1980 Jaynes investigation; and it is difficult to imagine that Misner, as an employee of the Indiana State Police, would be biased in favor of Mayes in conducting his analysis. In contrast with *Desrosiers*, there is no evidence or assertion by Defendants that Misner, who prepared the 2001 Police Report, is a non-expert with no formal training or that he is somehow unqualified to have performed the 2001 test and written the report. *See Desrosiers*, 156 F.3d at 962.

The only evidence that linked Mayes to the scene of the Jaynes rape and robbery was the identification testimony of Ms. Jaynes, who testified that Mayes, as the shorter and second rapist, was the only attacker who ejaculated when he raped her. Based on the 2001 DNA evidence, Mayes was not the source of the semen deposited by the rapist. The Court is cognizant of Defendants' argument that the results of the 2001 testing do not automatically exclude Mayes as one of the rapists and render him "innocent," even if they do exclude him as the source of the semen taken from Ms. Jaynes and her clothing, based on an argument that the semen could have been left by a pre-rape consensual partner. The Court is also aware that Solan, after having testified that there is no basis for questioning the validity of the 2001 DNA evidence, later testified that there was still a question as to whether Mayes was a rapist, offering the theory of a consensual partner. However, these arguments do not affect the scientific, technical basis of the 2001 Police Report but rather the facts as to whether the semen found on Ms. Jaynes came from a consensual partner rather than a

12

rapist and thus do not preclude the report's admission into evidence at trial.  The parties' dispute over the meaning and import of the 2001 Police Report as to Mayes' innocence remains at issue.

Accordingly, having reconsidered the June 21, 2006 ruling as to the 2001 Police Report, the Court now reverses its earlier holding, finding that Defendants have not discharged their burden of demonstrating that the 2001 Police Report lacks trustworthiness, and orders that Mayes need not offer an expert witness in order to attempt to admit the 2001 Police Report at trial.  Moreover, the Court is inclined to rule the report admissible at trial.

### C.  Judge Maroc's December 20, 2001 Order

On December 20, 2001, Judge Richard Maroc issued an order that provided:  "Based on the DNA testing and analysis, pursuant to I.C. 35-8-7, the Court ORDERS the Post-Conviction Relief filed July 9, 2001, be granted, that the convictions entered July 28, 1982, be vacated, that the victim be notified by the State through the deputy prosecutor of the pendency of the release of Larry Mayes, and that the Indiana Department of Corrections release Larry Mayes from custody forthwith."  Pl. Resp. to Mot. to Strike, Exh. D.  In the June 21, 2006 Order, the Court took judicial notice of the fact of Judge Maroc's December 20, 2001 order but excluded the words "Based on the DNA testing and analysis, pursuant to I.C. 35-38-7."  In the motion for reconsideration, Mayes argues that the Court should also take judicial notice of this basis for the vacatur–the DNA evidence.

Federal Rule of Evidence 201 provides:  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A federal court may take judicial notice

13

of state court orders. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). "In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citing 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5104 at 485 (1977 & Supp. 1994)). "Since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing." *Id*; *see also General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997).

The Court's June 21, 2006 decision not to take judicial notice of the DNA language from Judge Maroc's order was based principally on the effect of the Court's contemporaneous decision to exclude both the 2001 Police Report and the 2005 Orchid Cellmark report, the result of which was that the only evidence of the DNA testing that would have been admissible was the statement in Judge Maroc's order. This sole reference to DNA would have been overpowering evidence of innocence and thus was inadmissible pursuant to Federal Rule of Evidence 403 because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" in the absence of expert testimony from either party. *See* Fed. R. Evid. 403.

However, having reconsidered the admissibility of the 2001 Police Report, which is the data upon which Judge Maroc made his decision to vacate Mayes' convictions, the Court now finds that the basis for Judge Maroc's December 20, 2001 is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Defendants cannot reasonably argue that Judge Maroc did not make his decision based on the 2001 Police

14

Report.  Accordingly, the Court intends to take judicial notice of Judge Maroc's December 20, 2001 order and the reference to the DNA testing and results therein at trial for the limited purpose of showing that the 2001 testing and results were the basis for Judge Maroc's decision.  As noted in the June 21, 2006 Order, Judge Maroc's December 20, 2001 decision does not find Mayes "innocent," as no such language is contained within the order.

### D.  Limiting Instruction

In his motion for reconsideration, Mayes argues that the Court erred by stating that the issue of Mayes' innocence is not relevant to proving his claims under the 14th Amendment and Indiana state law.  Mayes contends that his innocence, which is bolstered by the admission of the DNA test results, is critical proof of his substantive claims as well as of his damages.  As for liability and his substantive claims, Mayes asserts only that his innocence makes his contentions as to the acts of Solan, Townsell, Myszak, and others as well as the allegations surrounding the October 6, 1980 identification and the hypnosis more plausible.  The Court is not persuaded.  Mayes' burden of proof on liability will be met by evidence relating to those specific events and not based on whether or not he actually committed the crimes with which he was charged.  Therefore, the Court does not change its position from the June 21, 2006 Order as to the relevance of innocence to liability.  In contrast, the question of Mayes' innocence is directly relevant to his damages, which, as Mayes explains, are "premised on [Mayes'] suffering as an innocent man wrongly deprived of his liberty," Pl. Br., p. 5, and which was not considered by the Court in its earlier Order.

Having determined that the 2001 Police Report and the reference in Judge Maroc's order to DNA as the basis of his ruling do not require expert testimony to be admitted at trial and that the

15

Court is inclined to admit them at trial absent some other valid objection, any evidence or reference to DNA in the 2001 Police Report, the Maroc order, or other evidence (such as deposition testimony or the basis of questioning of witnesses at trial), will be admitted solely on the issues of Mayes' damages.  Such evidence will not be admissible on liability issues.  The Court intends to instruct the jury that such evidence is to be considered for the limited purpose of determining Mayes' damages.

### E.  The Court's July 5, 2006 Order on Summary Judgment

Defendants' original motion to strike DNA references was filed as a result of Mayes' response to the Defendants' motions for summary judgment, although Defendants requested that the DNA evidence be stricken not only from Mayes' designation of evidence but also at trial.  Having considered the rulings of the instant Order and having reviewed the Court's determination on the motions for summary judgment in this matter, the Court finds that the portions of Mayes' designation of evidence that were stricken by the Court's June 21, 2006 Order do not materially alter the Courts' July 5, 2006 Order on the motions for summary judgment.  Accordingly, the Court will not issue a supplemental order on the motions for summary judgment as a result of the instant Order.

### CONCLUSION

Based on the foregoing, the Court now **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Reconsideration of the Court's June 21, 2006 Opinion and Order [DE 247], and the Court **DENIES as moot** Plaintiff's Motion for Reconsideration of the Court's June 21, 2006 Opinion and Order [DE 245].  The Court **ORDERS** that the parties will not be permitted to make reference to, attempt to introduce at trial, or solicit testimony regarding the October 2005 Cellmark testing and

results.  The Court further **ORDERS** that the parties may attempt to introduce the 2001 Indiana State Police Report authored by Paul Misner.  Finally, the Court **ORDERS** that it intends to take judicial notice of Judge Maroc's December 20, 2001 Order vacating Mayes' 1982 criminal convictions as well as the reason for the vacatur stated in that order.

So ORDERED this 21st day of July, 2006.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record