UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| LARRY MAYES, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO.: 2:03-CV-379-PRC |
| | ) | |
| CITY OF HAMMOND, INDIANA, et al., | ) | |
|     Defendants. | ) | |

## ORDER

This matter is before the Court on Plaintiff's Motion to Bar Defendants' Expert Arthur Leidecker [DE 131], filed by Plaintiff Larry Mayes on March 14, 2006. Defendant Myszak filed a filed a response on March 29, 2006, and the City of Hammond filed a response on March 29, 2006, adopting as its brief Defendant Myszak's response. On April 21, 2006, Mayes filed a reply.

Defendants in this matter have named as an expert witness Arthur Leidecker, asserting that he is qualified as an expert under Federal Rule of Civil procedure 702 in determining whether Lisa Jaynes was hypnotized by Officer Myszak. On January 28, 2006, Mr. Leidecker issued his report, which contained the following opinions: (1) the techniques performed on the victim by Mr. Myszak prior to her identification of Larry Mayes did not constitute hypnosis; and (2) it is reasonable for Mr. Myszak to say that the memory recovery session he conducted with respect to the victim was not hypnosis. He further opined that the questions of the effects of the hypnosis on the victim and of whether the hypnosis procedures conducted by Mr. Myszak complied with protocols for proper hypnotic procedure in the context of criminal investigation were irrelevant as there was no hypnosis and no intent or attempt to hypnotize Ms. Jaynes.

In rendering these opinions, Mr. Leidecker reviewed a packet of materials related to a three-day course (September 12-14, 1980) entitled "Scientific Ethical Hypnosis in Criminal

Investigations," a voluntary statement made by Ms. Jaynes to Charles Mak and Mike McPhillips of the Hammond Police Department (11/18/80), the deposition of Ms. Jaynes (9/04), the handwritten conversation with deputy prosecutor O'Halloran (1/14/01); the depositions of Raymond Myszak (1/25/82; 3/10/05), and the deposition of Mr. Jaynes (4/7/05).

In the interests of economy, the Court hereby incorporates the Factual Background set forth in the Court's July 5, 2006 Order ruling on motions for summary judgment.

In the instant motion to bar, Mayes argues that Mr. Leidecker is not sufficiently qualified in the areas in which Defendants have propounded his testimony, Mr. Leidecker failed to use a scientifically valid method in preparing his opinion, Mr. Leidecker failed to use reliable data in reaching his opinion, and Mr. Leidecker's opinions are not based upon a scientific method that is generally accepted in the scientific community.

The admissibility of expert testimony in federal court is governed by Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Court acts as a gatekeeper in determining whether so-called expert testimony meets the criteria established in *Daubert*. 509 U.S. at 589. In performing this function, the Court is to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id*. However, "[t]he rejection of expert testimony is the exception rather than the rule, and

2

'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1150 (N.D. Ill. 2001) (quoting Fed. R. Evid. 702 advisory committee's note).

Because "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience . . . a court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith*, 215 F.3d at 718 (internal quotation marks and citations omitted) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999)); *see also Parra*, 402 F.3d at 758; *United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002) (observing that the Advisory Committee notes to Rule 702 specifically provide that "[i]n certain fields, experience is the predominant, if not the sole, basis for a great deal of reliable expert testimony").

"The Daubert standard applies to all expert testimony, whether it relates to areas of traditional scientific competence . . . or other technical or specialized expertise." *Smith*, 215 F.3d at 719.  The Supreme Court outlined four factors that may be pertinent to the district court's analysis of expert testimony:  "1) 'whether [the expert's theory] can be (and has been) tested'; 2) 'whether the theory or technique has been subjected to peer review and publication'; 3) 'the known or potential rate of error'; and 4) 'general acceptance' among the relevant scientific community." *Id.* (quoting *Daubert*, 509 U.S. at 593-94.

First, the Court finds that Mr. Leidecker is sufficiently qualified as an expert by his knowledge, skill, experience, and training to provide the opinions set forth in his report.  Arthur Leidecker graduated in June 1959 from Foreman High School in Chicago.  In 1962, Leidecker attended the police academy for 13 weeks.  Leidecker held the rank of patrolman for the four years

3

he worked for the Chicago Police Department. Midway through those four years Leidecker was assigned to gang, drug, and prostitution activities. Leidecker resigned from the Police Department for a better career opportunity in real estate. Leidecker first became interested in hypnosis in about 1970, at which time he took a course in self-hypnosis training. Leidecker next took a hypnosis course in 1994. The first course he took that year was "Certified Basic Hypnotherapy." This course covered basic hypnotherapy, basic hypnotism, how to hypnotize, suggestibility tests, depth testing, various techniques of hypnotizing, the hypnotizability of subjects, trance depth of subjects, and practice. The second hypnotism related course Leidecker attended in 1994 was "Certified Advanced Clinical Hypnotherapist." These courses in 1994 involved the taking of tests, but did not involve the production of any written reports. Leidecker also took two hypnotism related courses in 1995. The first of these was titled "Certified Advanced Hypnotherapist." The next was in December 1995 and was called "Certified Hypnotism Instructor." This course was in New York over a two-week period and taught by the National Guild of Hypnotists (NGH).

In October 1996, Leidecker took a course titled "Certified National Federation of Neuro-Linguistic Programmers." Neurolinguistic programming (NLP) is a form of techniques that incorporate the use of imagination and hypnotism. Though the originators of this program say there is no such thing as hypnosis, Leidecker believes there is. Leidecker took this course because it taught additional techniques that he thought were useful. He believes NLP is essentially hypnotism, just under a different name. In November 1997, Leidecker attended a two-day weekend course titled "Certified National Federation of Neurolinguistic Psychology." This course was more of the same as the previous NLP course, plus Leidecker received certification to teach NLP as well. In May 1999, Leidecker both attended and assisted in instructing a two-day course titled "Certified

4

Complementary Medical Hypnotism." This course dealt with the use of hypnotism in relation to medical issues. Next, in October 2000, Leidecker became a "Board Certified Hypnotherapist." This involved the taking of an exam and the requirement that he have a paper published. For this publishing requirement, Leidecker wrote and published "From Scratch and On a Shoestring," a book about building a hypnotism practice for psychologists, chiropractors, or any business professional. The board that certified Leidecker was the National Guild of Hypnotists, which is the largest hypnotist organization in the world. Furthermore, the NGH is a select group of professional hypnotists who organized themselves to ensure the ethical practice of hypnotism in the United States and other countries. Leidecker is a member of the NGH. To become a member of the NGH, one must complete 100 hours of training, including the NGH's certification course and exams. One need not be a certified psychologist to be a member of the NGH.

In 1997 to the present, Leidecker has been the owner/director of the Leidecker Institute, a State of Illinois certified vocational school for training and certifying people in hypnotherapy. Leidecker is also the author or several published materials. Leidecker authored, printed, and distributed "Introduction to Neurotechnology for Hypnotists" for a course taught at the Leidecker Institute. That publication related to the use of light and sound machines for hypnotism. Furthermore, "Hypnotherapy Training Manual Course #101," "Hypnotherapy Training Manual Course #102," and "Hypnotherapy Training Manual Course #103" were prepared by Leidecker for courses he teaches at the Leidecker Institute. Leidecker has also authored "Neuro-Subliminal Communications Manual" for a course that he taught at the Leidecker Institute. "HypnoBirthing Training Manual: Introduction to Hypnotism for Birthing" was co-written by Leidecker and Marie Mongan for an organization called Hypnobirthing. It is basically a 100-page manual, of which

5

Leidecker wrote one-third to one-half, for a four-day course to train hypnotists that assist birthing mothers. The portion Leidecker authored dealt with methods for inducing hypnotism. Finally, "Clinical Hypnotism Curriculum" is the manual authored by Leidecker used in connection with the courses at the Leidecker Institute. Some of Leidecker's work has been reproduced by the NGH in a book produced for their convention. Several of Leidecker's publications are designated "State of Illinois Approved Curriculum." This designation means that these publications have been approved by the state so that the Leidecker Institute can be designated as a state-approved vocational school. Leidecker is a member of the Association for the Advancement of Ethical Hypnosis, an organization that is composed of a mix of hypnotists and psychologists.

However, as to Mr. Leidecker's methodology, the Court finds that Mr. Leidecker's testimony is not the product of reliable principles and methods. *See* Fed. R. Evid. 702. During his deposition, when asked for his definition of hypnosis, Mr. Leidecker stated that it is a "trance state when a person relaxes to the level that they're open to acceptable suggestions." When asked if that was the definition of hypnosis that he was using in preparing his report in this case, he initially responded that he did not know. He subsequently stated that "[i]f you test the person and you determine they are in hypnosis then you have hypnosis. Without testing one can't tell." Based on this statement, he asserted that if Myszak did in fact hypnotize Ms. Jaynes, but did no testing to establish that, no one could ever establish that she was hypnotized; however, he acknowledged that this assertion was not based on any scientific theory. Later, he appeared to assert that hypnosis could only occur when brain waves came down, but could cite no academic studies that established this as a generally accepted requirement for hypnosis in the scientific community. Mr. Leidecker also claimed that it is possible to determine "trance" by depth testing, but could not cite any scientific studies that depth

6

testing and lowering of brain waves were necessarily correlated or that depth testing was necessarily correlated with hypnotic state. Finally, Mr. Leidecker listed several behavioral phenomena that he asserted were necessary for hypnosis, but did not know of any scientific tests to support this claim.

Moreover, Mr. Leidecker's conclusion that the techniques performed on Ms. Jaynes by Myszak did not constitute hypnosis have no scientific basis. In his report and testimony, Mr. Leidecker first concluded that Ms. Jaynes had not been hypnotized because there was "no indication that real rapport was developed [between the hypnotist and the subject] which is necessary in a progressive relaxation induction." However, he did not know if this conclusion was based on any scientific study, and he could not cite any scientific studies which established that rapport must be established in order for hypnosis to be induced. Mr. Leidecker next concluded that no hypnosis had occurred because "no suggestibility testing was ever done to determine if Ms. Jaynes was suggestible, to what degree, and if she was even hypnotizable," but acknowledged at deposition that this conclusion was not based on any scientific study. Mr. Leidecker also opined in his report that there was no hypnosis because there was no indication that a test was done to see if hypnosis had in fact been achieved, but acknowledged at deposition that no scientific tests established that a person could not be hypnotized in the absence of such tests. He then cited a list of six tests which he asserted determine whether or not hypnosis was achieved, but acknowledged that there were no scientific studies which established that any of the cited tests were necessary for hypnosis. When asked if there was anything else which would support his opinion that the techniques performed on Ms. Jaynes by Mr. Myszak did not constitute hypnosis Mr. Leidecker said, "Not at this time off the top of my head," but that "something could occur to me but it doesn't now."

Similarly, Mr. Leidecker's conclusion that it was reasonable for Mr. Myszak to say that the

7

session he conducted with the victim was not hypnosis was not based on reliable data and had no scientific basis.  Mr. Leidecker first concluded that it was reasonable for Mr. Myszak to say that the session he conducted with Lisa Jaynes was not hypnosis on the basis that in her family therapy practice Ms. Jaynes currently uses relaxation techniques to help her clients and that she did not call this hypnosis.  He acknowledged, however, that Ms. Jaynes did not use hypnosis and hypnosis induction techniques in her practice.  He did claim, however, that having someone try to remember something that had actually happened in the past constituted visualization and possibly hallucination, although he could cite no scientific theory which supported his assertion.

Mr. Leidecker next asserted in his report that because Ms. Jaynes had never been hypnotized on any other occasion she had no hypnotic experience to which she could compare her feelings during the Myszak session and therefore did not know what hypnosis felt like.  Mr. Leidecker acknowledged in his testimony, however, that lack of previous experience with being hypnotized did not prevent hypnosis for the first time, and that there were no scientific studies which supported his conclusion.  Next, on page 3 of his report, under the heading Exhibit 5, Mr. Leidecker quoted at length from Ms. Jaynes and asserted that this demonstrated her "ability to remember with remarkable
detailed clarity without the aid of relaxation or any memory recovery suggestions."  The problem with this assertion is that it is undisputed that the reported testimony comes after, not before, she had the session with Myszak, and thus may be itself a graphic example of the additional facts, and additional certainty, engendered by the hypnosis.  Thus, this portion of his opinion is not based on reliable data.  On page 4 of his report Mr. Leidecker asserts that because Phil Jaynes testified that Ms. Jaynes seemed both relaxed and somewhat tense during the session this was an indication that

8

she was not hypnotized and that the elevator induction will not work if the subject remains tense. Mr. Leidecker was unable to cite to any scientific study in support of this assertion.

Next, Mr. Leidecker opined that because Ms. Jaynes stated at one point in her deposition that the induction lasted "a minute maybe" this was an insufficient time for hypnosis to be achieved, but could cite no scientific theory which supported this assertion.

The next paragraph of Mr. Leidecker's opinion cited the training manual for the Hypnosis Training for Criminal Investigator's course which detective Myszak had attended a few weeks before his session with Ms. Jaynes. This manual states that a hypnosis session is a lengthy procedure, may take a minimum of two hours, and that hypnosis may not be achieved on the first try. Mr. Leidecker was unable, however, to cite any study which supported these assertions, and there is no evidence that the training manual was based on reliable principles and methods in making this assertion.

Mr. Leidecker then cited testimony from Phil Jaynes that on one occasion Lisa Jaynes stated to him that she was not sure she was hypnotized, but could cite no scientific studies indicating that a subject's doubt that he or she had been hypnotized established that the subject had not in fact been hypnotized. Mr. Leidecker also failed to acknowledge the numerous occasions on which Ms. Jaynes has stated unequivocally that she was hypnotized, and Phil Jaynes' firm conclusion, after observing the session, that she was hypnotized. Mr. Leidecker cited no other reasons for his conclusion that it was reasonable for detective Myszak to conclude that the session he conduced with Ms. Jaynes did not constitute hypnosis.

Mr. Leidecker's report did contain additional material, primarily quotations from detective Myszak's deposition testimony and the training manual which detective Myszak had used in the

9

Hypnosis for Forensic Investigators training course. These materials, however, established only that detective Myszak had denied at deposition that he intended to hypnotize Ms. Jaynes– clearly an issue related to detective Myszak's credibility, on which an expert cannot comment–and that the session he conducted was a gross violation of what he had been taught at the training, as well as the appropriate legal standards in effect in 1980.

An additional paragraph of Mr. Leidecker's report, on page 5, commented that he felt it was inappropriate to have Phil Jaynes present for questioning of his 18-year-old daughter regarding a sex crime, and that this would make it less likely that Ms. Jaynes was hypnotized. However he could cite no scientific studies in support of this assertion. To the extent this statement was a comment on proper police procedures it was outside Mr. Leidecker's asserted area of expertise, and to the extent it related to the possibility of hypnosis occurring while Phil Jaynes was present it was based on no scientific study whatsoever.

Mr. Leidecker did claim that based on Myszak's 26 hours of training he would be unable to hypnotize Ms. Jaynes, though he acknowledged that his own students were able to hypnotize case subjects after 24 hours of training. He offered no specifics on why Mr. Myszak would be unable to hypnotize subjects after his training and dismissed the direct statement in detective Myszak's training manual that he would be able to hypnotize persons as a result of the training course. Mr. Leidecker then claimed in his conclusion that even a trained professional in the immediate presence of the subject would be unable to determine if a person were hypnotized, but could cite no scientific studies to support this claim.

Based on the foregoing and acknowledging that hypnosis, although a science, is not a pure science such as chemistry, physics, biology, engineering, or medicine, the Court finds that, although

10

Mr. Leidecker is qualified as an expert to give the testimony on the subjects upon which he was hired to opine, Mr. Leidecker's opinions were not sufficiently based on scientific studies, that his testimony was not the product of reliable principles and methods, and that he commented on the credibility of witnesses and gave opinions outside his areas of expertise.

Accordingly, the Court **GRANTS** Plaintiff's Motion to Bar Defendants' Expert Arthur Leidecker [DE 131].

So ORDERED this 21st day of July, 2006.

s/ Paul R Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record