UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| LARRY MAYES,                    ) | | |
|     Plaintiff,                  ) | | |
|                                 ) | | |
| vs.                             ) | | CAUSE NO.: 2:03-CV-379-PRC |
|                                 ) | | |
| CITY OF HAMMOND, INDIANA, et al., ) | | |
|     Defendants.                 ) | | |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Reconsider of the Defendant, City of Hammond, as to the Court's Partial Denial of its Motion for Summary Judgment [DE 278], filed by Defendant City of Hammond ("City") on July 13, 2006. Plaintiff Larry Mayes filed a response on July 21, 2006, and the City filed a reply on July 25, 2006.

Federal Rule of Civil Procedure 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b). The term "judgment" as used in Rule 54(b) "includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). Motions to reconsider an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e) and serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting

*Keene Corp. v. International Fid. Ins. Co.*, 561 F. Supp. 656, 665-66 (N.D. Ill.1982), *aff'd*,736 F.2d 388 (7th Cir. 1984) (citation and footnote omitted)), *amended by*, 835 F.2d 710 (7th Cir. 1987); *Publishers Resource Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quotation omitted); *see also In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 794 F. Supp. 261, 267 (N.D. Ill. 1992) ("Motions to reconsider are not at the disposal of parties who want to 'rehash' old arguments."); *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988).  A motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).  Accordingly, "motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling." *Zurich Capital Markets Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) (citing *Schartle v. Motorola, Inc.*, No. 93 C 5508, 1994 WL 323281 at *1 (N.D. Ill. June 24, 1994)).

In the motion, the City asks the Court to reconsider its holding that collateral estoppel did not preclude Mayes from relitigating Ms. Jaynes' identification of Mayes, the propriety and sufficiency of the evidence involving Ms. Jaynes' identification of Mayes, and the evidence of Mayes' consciousness of guilt in attempting to bribe a juror.  The City, citing *Alexander v. City of South Bend*, 433 F.3d 550 (7th Cir. 2006), also asks the Court to reconsider its holding that Mayes raised a genuine issue of material fact as to whether the City had a policy or custom for purposes of *Monell* liability.  The Court considers each argument in turn.

First, as to collateral estoppel, or issue preclusion, the City argues that Judge Maroc's December 20, 2001 order vacating Mayes' convictions did not vacate the Indiana Supreme Court's opinion in *Mayes v. State*, 467 N.E.2d 1189, 1191-95 (Ind. 1984) ("Mayes"), that Judge Maroc did not have jurisdiction to vacate *Mayes*, that the Indiana Supreme Court has not vacated *Mayes*, and that *Mayes* is a final judgment with regard to his 1982 criminal trial and conviction. In his December 20, 2001 Order, Judge Maroc ordered that "the convictions entered July 28, 1982, be vacated." Defendants are correct that Judge Maroc did not vacate the Indiana Supreme Court's decision in *Mayes*, nor did this Court so hold in its July 5, 2006 Order. However, it is undisputed that Judge Maroc had statutory authority pursuant to Indiana Code § 35-38-7 to vacate Mayes' convictions. That December 20, 2001 order nullified the convictions upon which the appeal that ultimately reached the Indiana Supreme Court in *Mayes* had been based. As the appeal to the Indiana Supreme Court in *Mayes* to challenge the very convictions that Judge Maroc later vacated was dependent on those convictions, the determination in *Mayes* no longer constitutes a final judgment with preclusive effect for the *purposes of issue preclusion* in this subsequent civil matter.[1]

---

[1] In its reply brief, the City cites numerous cases for the proposition that "only the Indiana Supreme Court can vacate its findings and opinions and that all lower appellate courts and all trial courts are bound by them." Def. Reply Br., p. 2 (citing *State ex rel. Meyer-Kiser Bank v. Superior Court of Marion County*, 177 N.E. 322, 325-26 (Ind. 1931) ("By its decisions [this court] determines what is the law of the land within its territorial jurisdiction, and all courts within the state, as well as all persons therein are controlled by its decisions relative to what is the law, and should yield obedience thereto."); *Cohoon v. Fisher*, 44 N.E. 664, 665 (Ind. 1896); *Horn v. Hendrickson*, 824 N.E.2d 690, 694 (Ind. Ct. App. 2005); *Justak v. Bochnowski*, 391 N.E.2d 972, 878 (1979)). However, a careful review of these cases reveals that they set forth, in one form or another, the principle of stare decisis as to principles of law, with which this Court does not and could not have any dispute, but do not address the preclusive effect of an appellate decision for which the underlying convictions have been vacated. As noted in the text above, the Court does not find that Judge Maroc vacated the Indiana Supreme Court decision in *Mayes* but rather that when Judge Maroc vacated Mayes convictions, the appellate decisions in *Mayes*, which were made in order to affirm then-valid convictions, no longer have preclusive effect. Accordingly, these cases are inapposite to the instant analysis.

Nor is the Court persuaded by the cases cited by the City in its reply brief in which a defendant is precluded in his post-conviction relief proceedings from re-litigating issues from his criminal case, which had been lost on appeal. *See* Def. Reply Br., p. 4 (citing *Williams v. State*, 808 N.E.2d 652, 659 (Ind. 2004); *Shoulders v. State*, 578 N.E.2d 693, 695-97 (Ind. Ct. App. 1991)). In those cases, the convictions had not been vacated; rather, the civil plaintiff was still in the process of seeking post-conviction relief. In contrast, in this case, Mayes had already sought post-conviction relief, which was granted and the result of which was Judge Maroc's order vacating the convictions. Similarly, the cases cited

On this basis, the Court reaffirms its July 5, 2006 Order holding that issue preclusion is inapplicable.

In its analysis of issue preclusion in its July 5, 2006 Order, the Court declined to follow the decision in *Alexander v. City of South Bend*, 320 F. Supp. 2d 761 (N.D. Ind. 2004), which, as a decision from a fellow district court may be persuasive authority but is not mandatory authority. In *Alexander*, a wrongful conviction case with procedural similarities to the present cause of action, the district court held that issue preclusion barred the plaintiff's arguments regarding the defendants' investigative techniques, holding that the plaintiff had had a full and fair opportunity to litigate those issues during the criminal trial. *Id*. at 773-75. Despite a brief written argument by Alexander that the trial court's vacatur of his convictions prevented the application of issue preclusion to the appellate decision in his criminal case, the district court in *Alexander* did not discuss, much less acknowledge, this argument in its order. Nor did the district court list or discuss the element of a final, valid judgment in its analysis of issue preclusion. Accordingly, this Court has no ground on which to evaluate the weight given by the *Alexander* court to Alexander's finality argument, the reason that the *Alexander* court may have rejected that argument, or, more importantly, the basis for the *Alexander* court's determination, if any, that there was a final, valid judgment on which to base issue preclusion. As such, the Court does not find that *Alexander* is persuasive authority on the application of issue preclusion in the instant matter.

In its June 5, 2006 Order, the Court also relied on the decision in *Huffman v. State*, 717 N.E.2d 571, 575 (Ind. 1999) ("*Huffman III*"), the reliance which the City now challenges. In

---

by the City in its Reply brief addressing suppression or habeas corpus issues do not implicate a vacated conviction. *See Id*. at p. 6 (citing, among others, *Gregory-Berg v. Hanks*, 332 F.3d 1036, 1044-1051 (7th Cir. 2003); *United States v. Sleet*, 54 F.3d 303, 309-310 (7th Cir. 1995); *Allen v. State*, 813 N.E.2d 349, 360 (Ind. Ct. App. 2004)).

*Huffman v. State*, 543 N.E.2d 360 (Ind. 1989) ("*Huffman I*"), the Indiana Supreme Court affirmed Huffman's convictions for murder and conspiracy to commit murder and vacated his convictions for robbery and conspiracy to commit robbery. In post-conviction proceedings, the *trial* court reversed all of the convictions and the death sentence. On direct appeal by the State, the Indiana Supreme Court affirmed the reversal in *State v. Huffman*, 643 N.E.2d 899 (Ind. 1994) ("*Huffman II*"). On remand from *Huffman II*, Huffman agreed to plead guilty to murder and conspiracy to commit robbery and to testify against a co-defendant in exchange for a dismissal of the remaining charges and an agreement by the State not to seek the death penalty. *Huffman III*, 717 N.E.2d at 573. On appeal of his sentence following the guilty plea, Huffman argued that res judicata applied because the trial judge in his first trial found intoxication to be a mitigation factor at sentencing. *Id.* at 575. The Indiana Supreme Court disagreed, holding that "[f]or principles of res judicata to apply, there must have been a final judgment on the merits as to that issue. There has been no such final judgment as to the issue of mitigation. The original trial court judgment and sentence were reversed upon the defendant's post-conviction petition and proceedings." *Id.*[2] Notably, as in the instant cause of action, the original trial court judgment and sentence had been affirmed on appeal by the Indiana Supreme Court in *Huffman I*. This Court applied the same principal to the instant cause of action. In post-conviction proceedings, Judge Maroc, the trial judge, vacated Mayes' convictions from his first trial. As such, there is no longer a final, valid trial court decision on which to base

---

[2] The City continues to insist that *Huffman III* was applying the principal of *res judicata* (claim preclusion) rather than *collateral estoppel* (issue preclusion) on the basis that the court employs the term "*res judicata.*" As this Court noted in its July 5, 2006 Order, historically, courts in Indiana have broadly utilized the term *res judicata* to encompass the preclusive effect of both claim preclusion and issue preclusion. A careful reading of *Huffman III* reveals that Huffman did not seek to preclude any claim based on his first trial but rather sought preclusion of a single issue–the trial court's application of a mitigating factor at sentencing. Accordingly, although the court in *Huffman III* employs the term *res judicata*, it is in fact applying collateral estoppel, or issue preclusion.

issue preclusion, and as set forth above, without final, valid trial court convictions as a result of the vacatur, the previous appeal of those convictions prior to their vacatur cannot have preclusive effect in this subsequent cause of action.

Accordingly, the Court denies the motion as to issue preclusion, affirming its July 5, 2006 Order holding that issue preclusion based on Mayes' criminal proceedings in the Jaynes case does not prevent Mayes from challenging the investigation.

The Court now turns to the City's argument that the Court erred by failing to follow the Seventh Circuit's opinion in *Alexander v. City of South Bend*, 433 F.3d 550 (7th Cir. 2006), when the Court held that Mayes had raised a genuine issue of material fact as to the existence of a *Monell* policy or custom in the Hammond Police Department ("HPD") at the time of the investigation that led to his convictions in the Jaynes case. In *Alexander*, the Seventh Circuit rejected Alexander's alleged basis for *Monell* liability, holding that

> the shortcomings in this investigation are not indicative of a custom or policy; rather they are indicative of one flawed investigation. Alexander points to no other suggestive lineups or photo arrays, no other conspiracies against blacks, and no other incidents of destroyed evidence. Alexander's *Monell* claim fails for a complete absence of evidentiary support.

*Id* at 557-58. However, repeated constitutional failures with respect to one individual "as well as a culture that permitted and condoned violations of policies" may be sufficient to withstand summary judgment on a *Monell* claim. *See Woodward v. Correctional Med. Servs. of Illinois*, 368 F.3d 917, 929 (7th Cir. 2004). In contrast with the findings in *Alexander*, this Court specifically held that the basis for *Monell* liability in this matter is not premised solely on the single investigation in the Jaynes case (having identified the various alleged inadequacies by multiple officers in the Jaynes investigation) but rather the combination of the multiple alleged violations in the Jaynes

6

investigation along with the evidence of a culture that permitted and condoned violations of policies, including "that HPD had no policies or protocols concerning the basic investigative tasks at issue in this case–documenting and disclosing exculpatory and impeachment evidence and conducting identification procedures" and that there was no "formal training for detectives," DE 259, p. 90; that "Townsell, Ratajczak, and Myszak could only have acted or failed to act as they did in this case in the absence of training and supervision," *id*. at 91; that all supervisory authority for detectives had been delegated entirely to Lieutenant Solan and that Lieutenant Solan recognized the importance of the standards espoused by the various experts in this case as to documentation and reporting; that "Solan testified that, had he reviewed the Jaynes investigative file and had been aware of the conduct of the individual defendants in this case described above, he would have condoned their conduct as consistent with minimally accepted police practice and HPD protocols," *id*. at 92; that "Lieutenant Seaman only reviewed reports at the end of the case when he got the whole file, trusting that experienced detectives would do their jobs," *id*. at 91-92; and that "the policy of the lieutenants, including Solan, who were effectively given the final policymaking authority in the HPD for the detectives, was a hands-off approach by which the detectives were given the freedom to conduct their investigations and seek probable cause affidavits as the detectives saw fit, with insufficient supervision or intervention by the lieutenants to ensure that constitutional rights were being protected," *id*. at 93. Accordingly, the holding in *Alexander* cited by the City is inapplicable to the facts and holding set forth by this Court in its July 5, 2006 Order.

Finally, as to the arguments raised by the City regarding the scope of Dr. Lynn's testimony, the Court has already decided that issue to some extent in its July 21, 2006 Order at docket entry 341 denying the Motion for Sanctions to Bar Dr. Lynn and that issue is also the subject of a pending

7

motion in limine.  As a determination on the issue is not necessary for a ruling on the instant motion for reconsideration, the Court declines to address the issue in this context.

Based on the foregoing, the Court **DENIES** the Motion to Reconsider of the Defendant, City of Hammond, as to the Court's Partial Denial of its Motion for Summary Judgment [DE 278].  The Court **REAFFIRMS** the trial setting of **August 7, 2006**.

So ORDERED this 1st day of August, 2006.

s/ Paul R Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record