UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA,
HAMMOND DIVISION

| | |
|---|---|
| LARRY MAYES, ) | |
| ) | |
| Plaintiff, ) | No.  2 :03 CV 379 |
| ) | |
| v ) | |
| ) | |
| CITY OF HAMMOND, INDIANA, et al., ) | Magistrate Judge Cherry |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS
PETITION FOR ATTORNEYS' FEES AND COSTS**

Plaintiff Larry Mayes, by his attorneys John L. Stainthorp of People's Law Office, and Nick Brustin and Jennifer Laurin, of Cochran Neufeld and Scheck, has filed a petition for attorneys' fees and costs.  In support of the petition, plaintiff has filed affidavits from attorneys Stainthorp, Brustin, Laurin, Prakash and Elson, together with a listing of time expended on the case and affidavits supporting the fee requested, time sheets documenting the time spent on the case by paralegals and law students, and a listing of costs reasonably expended on the case.  For the reasons set forth below, the petition should be granted in full.

**Introduction**

To say this was a hard fought case would be a gross understatement.  At every turn defendants have challenged the plaintiff's right to any recovery in this matter, and have contested issues that would appear to be incontestable.  Thus, defendants have refused to acknowledge the DNA results which established that plaintiff was not the source of the semen recovered from the rape victim immediately after the rape, have refused to acknowledge that Myszak conducted a

hypnosis session with Ms. Jaynes despite uncontradicted facts and expert testimony establishing that the session administered by Myszak could reasonably be described as nothing else, and have refused to acknowledge that any of the detectives' actions during the original investigation into the rape of Ms. Jaynes were improper in any way, or that their failure to document these actions was incorrect. Most importantly, defendants have refused to acknowledge that Mr. Mayes is not guilty, despite the fact that his conviction has been vacated and that there is nothing to tie him to the crime, now that Ms. Jaynes' eyewitness identification of him has been discredited.

At every litigation turn, defendants have, as is their right, forced plaintiff to establish his entitlement to relief, challenging the propriety of his expert's reports, challenging the scope of his pleadings, motions and memoranda, challenging his right to have a jury determine the issues in the case, challenging the admissibility of his proof at trial, and challenging his right to a verdict of any amount in his favor. While defendants are of course entitled to litigate in this manner, it necessarily means that any competent attorney representing the plaintiff must aggressively protect the plaintiff's right to a fair trial, and must expend great amounts of time in establishing his case and responding to the attacks of the defendants, and must spend significant resources to obtain the highest level of justice for the plaintiff. All this with a plaintiff whom the defendants attempted to depict as worthless and contemptible, and who was obviously unable to contribute toward the financial burdens of the case.

The risks to plaintiff's attorneys in undertaking this case were enormous. Counsel undertook this case on a contingent basis, facing the realistic prospect that they would recover nothing for the thousands of hours spent on the case, and would be saddled with massive bills for litigation expenses. Defendants clearly recognized that their best chance of winning this case

was to denigrate the plaintiff, and make the jurors dislike him so much that they would award him nothing, despite the obvious violations of his right to a fair trial. Plaintiff's counsel were aware that there were significant risks that this strategy would work, yet nevertheless represented him for several years in preparing for trial and eventually winning a significant verdict in his favor.

Defendants spared no costs in their efforts to defeat the plaintiff. They hired three different experts to opine about the session conducted by Myszak, in an attempt to portray it as benign, as well as hiring a former Chicago Police Department detective who claimed he spent vast amounts of hours studying the record in the case in order to opine that there was no due process violation. None of these experts testified at trial. At one time, five different sets of attorneys represented the various defendants, and all regularly appeared at the multiple depositions (more than 30) taken in the case. At the time of trial the primary defense firm employed multiple in-court attorneys as well as a myriad of paralegals and out-of-court assistants. Throughout the trial, defendant Hammond paid Myszak's attorney to attend every session, even though Myszak had previously been dismissed as a defendant on summary judgment.

Despite the efforts by the defendants to hobble plaintiff's ability to present his evidence to a jury, and their attempts to avoid any jury trial whatsoever, plaintiff was able to present his case to a jury over a period of more than two weeks in August 2006. That jury returned a verdict in favor of plaintiff on all claims before it, awarding him $9,000,000 in compensatory damages for the injuries he suffered as a result of the defendants' violations of his constitutional right to a fair trial.

**Legal Standards for Determining the Fee Award.**

As a result of this verdict, Mr. Mayes is a prevailing party on his § 1983 claims as a matter of law, and is thus entitled to an additional award of attorneys' fees. 42 U.S.C. § 1988; *Riverside v. Rivera*, 477 U.S. 561, 578 (1986); *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Venegas v. Mitchell*, 495 U.S. 82 (1990) (prevailing party in civil rights case under § 1983 is entitled to reasonable attorney's fee and costs pursuant to 42 U.S.C. § 1988). These fees include all reasonable hours expended on pretrial, trial, and post-trial work. *Illinois Welfare Rights Org. v. Miller*, 723 F.2d 564, 566-67 (7th Cir. 1983).

In determining the amount of attorney's fees to be awarded to a prevailing plaintiff under §1988, the initial step is determining the "lodestar" figure.

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.

*Hensley v. Eckerhart*, 461 U.S. at 433. Counsel for the prevailing party should "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* at 434. Where plaintiff has not prevailed on all of his claims the court must make two enquiries:

> In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.* Where:

> plaintiff's claims for relief . . . involve a common core of facts or . . . [are] based on related legal theories . . . [m]uch of counsel's time will be devoted generally to the

> litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. See *Davis v. County of Los Angeles*, supra, at 5049. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* at 435.

In this case, plaintiff's counsel have gone through their time sheets and eliminated any hours which, in the exercise of reasonable billing judgment, they concluded were redundant, unnecessary or should not reasonably be charged to defendants. For instance, plaintiff's counsel spent time attempting to arrange for help for plaintiff with his work, medical and living arrangements after release from prison and prior to the trial. They have eliminated these hours from their fee request. On the other hand, counsel have not eliminated from their hours claimed time spent on claims against defendants who were eventually dismissed from the case, either voluntarily (Williams, Tumildalsky and Seaman, Ratajczak and Townsell), or by the Court at the summary judgment stage (Myszak and Dupey). For all of these claims the time spent was integrally related to the common core of facts and was based on related legal theories.

The central claim presented by the plaintiff was that he was denied his right to a fair trial and this denial was caused by the policies and practices of the City of Hammond and its police department. It was initially unclear which Hammond police officers were responsible for

training and supervision in 1980-82. In answers to interrogatories Hammond identified these officers as Tumildalsky and Seaman, but it later appeared that this was incorrect, although Hammond never formally withdrew its interrogatory answers. When it appeared that Tumildalsky and Seaman were unnecessary as defendants in this case plaintiff voluntarily dismissed his claims against them.[1] Williams was named as a defendant because he was identified as an arresting officer and also participated in the line-up at which Jaynes eventually identified Mayes. After his deposition was taken it appeared that his involvement in the case was minimal,[2] and plaintiff then agreed to voluntarily dismiss him.[3] Ratajczak and Townsell were both central players in the investigation of the Jaynes case (they were the primary investigating officers), but both died before they could be served as defendants in this case. Plaintiff spent no significant time primarily devoted to these defendants, other than researching whether they could be maintained as defendants despite their death, eventually concluding that they could not.[4]

As to Myszak and Dupey, the two defendants dismissed at the summary judgment stage, they were both crucial actors in the case as to the hypnosis and the lack of training and supervision respectively. All of the time expended by plaintiff's counsel on these defendants

---

[1]Tumildalsky and Seaman were voluntarily dismissed pursuant to stipulation of the parties on March 6, 2006. DE 113.

[2]Williams claimed at deposition that he could not recall being involved in the arrest or the lineup, and it appeared he was not present in the room when Myszak prevailed upon Jaynes to change her lineup identification. Williams deposition at 77, 80.

[3]DE 84, September 23, 2005

[4]Ratajczak was voluntarily dismissed pursuant to stipulation of the parties on April 26, 2006. DE 186. Plaintiff acceded to the defendants' motion for summary judgment as to Townsell on the grounds that he was deceased and it was too late to substitute his estate as a party. DE 191, May 24, 2006.

would have been expended whether or not they were named defendants, other than the briefing with respect to them at the summary judgment stage. Plaintiff has parsed out those hours specifically attributed to this briefing, but contends that even that time should be compensated, since the claims against them were related to the claims on which he succeeded (*Hensley* at 434), it was necessary for the overall litigation of the case, and the lawsuit cannot be viewed merely as a series of discrete claims. *Hensley* at 435. Rather, viewing the overall excellent result obtained by the plaintiff, the "attorney[s] should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation." *Hensley* at 435.

**Plaintiff's Fees Are Reasonable and Compensable**

The number of hours reasonably expended on behalf of plaintiff is documented in the attached declarations and contemporaneous billing records of plaintiff's counsel. These time records more then adequately meet the documentation requirements set forth by the Supreme Court. See *Hensley*, 416 U.S. at 437, n. 12; *Chicago Messenger Service, Inc. v. Nextel Communications, Inc.*, 2005 U.S.Dist. LEXIS 450, *12 (N.D. Ill.) ("the descriptions provided are typical of those seen on attorneys' billing statements. And the descriptions are adequate to convey the gist of the services provided in each case."); *Zabkowicz v. West Bend Co.*, 789 F.2d 540, 550 (7th Cir. 1986) (fee records should "set forth a sufficient description of the type of work performed").[5] With respect to Archana Prakash, who did not keep records of time spent as contemporaneously as the remainder of plaintiff's counsel, plaintiff has significantly reduced the

---

[5]With respect to attorney Laurin, there are a few occasions on which she noted that she had performed work but failed to record the number of hours spent. Plaintiff does not seek to recover for these hours, even though Ms. Laurin spent a substantial amount of time on the work recorded.

number of hours claims to take account of this.  Moreover, there is no doubt that she did the work for which she has submitted records, and plaintiff has candidly admitted that her record keeping was not as diligent as it should have been.

Moreover, while plaintiff's counsel undoubtedly spent a significant amount of time on the case, this was absolutely necessary in order to adequately prepare the case for trial and present it to the jury.  Indeed, at several depositions defendants were represented by multiple attorneys, while only a single attorney for the plaintiff appeared to defend or take the deposition.  *See, e.g.,* depositions of Phil Jaynes (1 attorney for plaintiff, 4 for defendants), Rich Wolter (1 attorney for plaintiff, 3 for defendants), Candy Lucas (1 attorney for plaintiff, 4 for defendants), Larry Joe Mayes Jr. (1 attorney for plaintiff, 3 for defendants), Andre Lawson (1 attorney for plaintiff, 4 for defendants), Ralph Geiselman (1 attorney for plaintiff, 2 for defendants), Arthur Leidecker (1 attorney for plaintiff, 2 for defendants), Erica Liljedahl (1 attorney for plaintiff, 2 for defendants), Dr. Steven Lynn (1 attorney for plaintiff, 2 for defendants), James Hill (1 attorney for plaintiff, 4 for defendants plus 2 paralegals), David Schneider (1 attorney for plaintiff, 3 for defendants), Charles Mak (1 attorney for plaintiff, 5 for defendants), Michael McPhillips (1 attorney for plaintiff, 4 for defendants), Paul Misner (1 attorney for plaintiff, 3 for defendants), Steven Ridgely (1 attorney for plaintiff, 5 for defendants), Steven Rothlein (1 attorney for plaintiff, 2 for defendants), Robert Seaman (1 attorney for plaintiff, 2 for defendants), Richard Tumildalsky (1 attorney for plaintiff, 5 for defendants), Thomas Vanes (first deposition, 1 attorney for plaintiff, 4 for defendants) and Raymond Williams (1 attorney for plaintiff, 5 for defendants).

Also, plaintiff's counsel specifically planned so that they would not duplicate efforts in preparing this complicated case for trial.  During the written discovery process all of plaintiff's

8

counsel had to be aware of the specific documents produced, but specialized to the extent possible with Brustin and Laurin concentrating more on the policy documents produced, while Stainthorp spent more time on the documents produced with respect to the Jaynes case (especially the documents produce belatedly around the beginning of 2006), and the Pucalik case (which comprised hundreds of pages of documents which had to be reviewed, organized and annotated).

In the course of preparing their case for trial plaintiff's consulted at some length with one police practices expert, Michael Lyman, who was not eventually used. After spending a lot of time and resources with Mr. Lyman in 2005, plaintiff eventually came to the conclusion that he was not an appropriate expert for this case, even though he was prepared to give an opinion that was fully supportive of the plaintiff's position. Consultation with an expert who is not used is a responsible and proper manner for an attorney to prepare a case for trial, and such time should be compensated. *See, e.g.*, *Tart v. Elementis Pigments Inc.*, 191 F. Supp. 2d 1019, 1029 (S.D. Ill. 2001).

At the time of trial plaintiff had two attorneys handling the case, while defendants had at least five counsel (Jensen, Feldt, Schwarz, Kurowski and O'Connor) present in court at all times, plus Myszak's attorney Banasiak, as well as additional counsel and paralegals apparently present at other times. Overall, plaintiff's counsel had a significant inducement to economize on the time spent on the case to the extent possible - they had no guarantee of ever getting paid, so it would make no sense to waste time rather than use their time diligently and efficiently.

**Reasonable Hourly Rates**

Attorneys Stainthorp, Brustin, Laurin, Prakash and Elson seek an award of fees at rates

that are well within those charged by lawyers in the Chicago and New York areas of comparable skill, experience and reputation. See attached supporting affidavits of Attorneys. The rates for Chicago and New York should be used since it is apparent that a case of this size and complexity could not be adequately handled by civil rights attorneys in the Hammond area. Indeed, both Brustin and Stainthorp have indicated that they explored the possibility of employing local counsel from Hammond to handle this case, and concluded that this was not feasible. This was a case which needed specialized counsel who were experienced in civil rights litigation and had the resources necessary to finance for several years an expensive case which required extensive expert testimony. Both Cochran, Neufeld and Scheck and People's Law Office fit this description, but there are no such law firms in Hammond or elsewhere in northwest Indiana. Where local counsel is unavailable it is proper for a plaintiff to employ out-of-town counsel and they should be paid at the rates that are reasonable for their community. As the Seventh Circuit noted in a Title VII case from the Northern District of Indiana where the plaintiff employed counsel from Washington D.C.:

> Attorneys with specialized skills in a narrow area of law, such as admiralty law, patent law, or antitrust and other complex litigation, tend to be found in large cities, where an attorney may have a greater opportunity to focus on a narrow area of law. As a specialist, the attorney will usually charge more for performing services in his area of expertise than a general practitioner will charge for performing similar services. Furthermore, the costs of practicing law will vary from city to city, and such costs will be reflected in the rates of the attorneys.
>
> We think that a judge, in allowing an attorney's fee under Title VII or similar statute, has discretion to question the reasonableness of an out of town attorney's billing rate if there is reason to believe that services of equal quality were readily available at a lower charge or rate in the area where the services were to be rendered.
>
> If, however, a party does not find counsel readily available in that locality with whatever degree of skill may reasonably be required, it is reasonable that the party

go elsewhere to find an attorney, and the court should make the allowance on the basis of the chosen attorney's billing rate unless the rate customarily charged in that attorney's locality for truly similar services is deemed to require an adjustment.

*Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir. 1982); see also, *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003).

Counsels' attorney fees for representing plaintiff in this matter have been billed at the following rates: John Stainthorp, $400 per hour, Nick Brustin $325 per hour, Jennifer Laurin and Archana Prakash $225 per hour, Ben Elson $175 per hour and paralegals and law students $100 per hour as set forth in the attorneys' timekeeper summaries and billing records. These are current rates as plaintiff does not seek interest on his award.

As set forth in the affidavits in support of the fee petition, these are reasonable rates for these attorneys considering their skills and experience. In the event that defendants challenge these rates they must present competent evidence, including billing records, establishing why a lower rate is essential. See *Spina v. Forest Preserve District of Cook County*, 2002 U.S. Dist. LEXIS 16005, at *8 (N.D. Ill.), citing *Pressley v. Haeger*, 977 F.2d 295, 298 (7th Cir. 1992) (court should have accepted plaintiff's evidence of market rate, in the form of attorney affidavits, absent competing evidence submitted by defendants); *Flaherty v. Marchand*, 284 F. Supp.2d 1056 (N.D. Ill. 2003) (attorney awarded rate of $450 per hour for successful representation in Title VII and Section 1983 claim); *Pawell v. Metropolitan Pier*, 2005 U.S.Dist. LEXIS 16472 (N.D. Ill.) (attorney awarded rate of $415 per hour in civil rights case that resulted in $2.8 million verdict); *Microsoft v. TNS International*, 2004 U.S.Dist. LEXIS 3273 (N.D. Ill.) (partner awarded $450 per hour for representation of prevailing party).

**Adjustment of Lodestar**

It is appropriate and proper for the court in this case to accept the rates set forth by the plaintiff's counsel and the hours set forth in their time sheets to arrive at a lodestar figure. Once this figure has been arrived at, the court has discretion to adjust this figure, up or down, based on several factors identified by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, at 429 n.3. While many of these factors would justify an upward adjustment of the lodestar figure in this case, plaintiff recognizes that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate," *id.* at 434 n.9, and does not request such an upward adjustment. However, all of these factors strongly militate against any reduction in the lodestar figure. This was a case with a client who many would consider as "undesirable" with a difficult background, a case which took a massive amount of time, involved complex legal issues which required a high degree of skill, excluded other employment because of the time necessary to litigate this case, was accepted on a contingent basis with a significant possibility of yielding no recovery at all, where there was an excellent result obtained by attorneys of high reputation who litigated the case skillfully, and where awards to attorneys in similar cases are higher than the rates sought here. Thus, the full lodestar figure should be awarded to these attorneys and paralegals.

**Costs**

In addition to attorney's fees, plaintiff is also entitled to recover some of the out-of-pocket costs he has expended in order to successfully litigate this case. Plaintiff recognizes that under current law he is not entitled to bill for certain costs, such as the expense of obtaining and presenting expert testimony, and he has therefore excluded these from the costs which he seeks to recover from the defendants. Plaintiff has set forth the costs which he is entitled to recover in Attachments 19 and 20, and requests that he be awarded all of these costs which were necessary for the litigation of this case.

**CONCLUSION**

Plaintiff should be awarded attorney fees and costs as requested in the Petition.

Dated: October 5, 2006

Respectfully submitted,

/s/ Nick Brustin
Nick Brustin, Jennifer E. Laurin
Cochran Neufeld & Scheck, LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
(212) 965-9081
(212) 965-9084 (Fax)
Nick@cnscivilrights.com

/s/ John Stainthorp
John L. Stainthorp
People's Law Office
1180 N. Milwaukee
Chicago, IL 60622
773 235-0070
773 235-6699 (Fax)
Stainthorp@aol.com

**Attorneys for Plaintiff Larry Mayes**

## NOTICE OF FILING AND CERTIFICATE OF SERVICE

To:  David Jensen, Rob Feldt          Steve Kurowski
     Joseph Banasiak                  William O'Connor

    Please take notice that on October 5, 2006 I filed with the clerk of the United States District Court for the Northern District of Indiana the attached **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS PETITION FOR ATTORNEYS' FEES AND COSTS**, a copy of which is served upon you by the court's electronic filing system.

                                          /s/John L. Stainthorp