# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

LARRY MAYES,                              )
                                          )
      Plaintiff,                      )
                                          )
v.                                        )     CAUSE NO.: 2:03-CV-379-PRC
                                          )
CITY OF HAMMOND, INDIANA, et al.,         )
                                          )
      Defendants.                     )

## OPINION AND ORDER

This matter is before the Court on an order from the United States Court of Appeals for the Seventh Circuit [DE 546], issued on July 15, 2008, and filed with this Court on July 17, 2008. The Court of Appeals has remanded this case for the limited purpose of allowing this Court to inform the Court of Appeals whether it is inclined to vacate the jury verdict and judgment entered in this case. On August 8, 2008, upon order of the Court, the parties filed with this Court a Joint Brief in Support of the Parties' Request for Vacatur of the Verdict and Judgment as Condition Precedent to Settlement.

Having balanced the equities of the private and public interests implicated by the instant request for vacatur, the Court now **ADVISES** the United States Court of Appeals for the Seventh Circuit that it is inclined to grant the joint request of the parties to vacate the August 22, 2006 jury verdict and the August 25, 2006 judgment in this case as a condition of their proposed settlement agreement. The basis for the Court's decision is set forth below.

# PROCEDURAL BACKGROUND

Plaintiff Larry Mayes filed his civil rights Complaint with this Court on September 3, 2003. On July 5, 2006, the Court issued an Order granting in part and denying in part the City of Hammond's Motion for Summary Judgment, granting Defendant Raymond Myszak's Motion for Summary Judgment, granting Defendant Frank DuPey's Motion for Summary Judgment, and granting in part and denying in part Defendant Michael Solan's Motion for Summary Judgment.

A jury trial was held, and on August 22, 2006, the jury returned a verdict in favor of Mr. Mayes and against Defendants City of Hammond and Solan in the amount of $9 million. Immediately following the jury verdict, the Court ordered the Clerk of Court to enter judgment on the verdict, which the Clerk of Court entered on August 25, 2006.

Cross appeals were then filed with the United States Court of Appeals for the Seventh Circuit, the appeals were consolidated, the parties fully briefed the appeals, and oral arguments were heard by the panel. On March 10, 2008, the parties informed this Court during a telephonic conference that a settlement had been reached among the parties in the amount of $4.5 million. On March 25, 2008, an order from the Court of Appeals was docketed in this case, granting a joint motion to stay the appellate proceedings as a result of the settlement.

On June 26, 2008, the parties filed a Joint Motion to Vacate the Underlying Judgment and Jury Verdict with the Court of Appeals. In the motion, the parties represented that they have reached a preliminary settlement of all matters in the consolidated appeal subject to three conditions precedent: (1) the Court of Appeals refraining from issuing an order on the pending appellate briefs; (2) an order from the Court of Appeals vacating the jury verdict and judgment in the district court; and (3) the approval of the settlement and the issuance of a bond by the Hammond Common Council

in the amount of the settlement. The parties also represented that the Hammond Common Council approved two ordinances regarding the settlement and the issuance of a bond to fund the settlement and that the settlement funds are now available.

On July 10, 2008, the parties filed a Notice of Status with the Court of Appeals, requesting that the Court of Appeals continue to stay the appeal pending resolution of the Joint Motion to Vacate.

On July 15, 2008, the Court of Appeals issued an order denying the parties' Joint Motion to Vacate and remanding to this Court "for the limited purpose of allowing the district court to inform us if it is inclined to vacate the judgment and jury verdict." Order, docket entry 546. The order was docketed with this Court on July 17, 2008.

On July 29, 2008, this Court issued an Order setting forth the standard for vacatur of a district court judgment as a condition of settlement during the pendency of an appeal, articulating numerous issues contemplated by the Court in balancing the private and public interests in such a vacatur in the instant case, and ordering the parties to file a joint brief setting forth the law and facts addressing not only the Courts' concerns but any other relevant issues. The parties filed their joint brief on August 8, 2008.

In the joint brief, the parties provided additional factual background regarding the steps taken to effectuate the settlement in this case. The Mayor of and Corporation Counsel for the City of Hammond, with Hammond's litigation attorneys, mediated with Mr. Mayes' attorneys at their request several months after oral argument before the Court of Appeals. The Mayor had authority to bind the City of Hammond, subject to the approval of the Hammond Common Council. This approval process required several public hearings before the Hammond Common Council. Two

ordinances were drafted and proposed; one ordinance addressed the settlement itself and the other addressed the issuance of a bond to fund the settlement. The two ordinances had three public readings at successive public hearings before the Hammond Common Council, and they eventually were passed. In addition, the bond issue required approval by the Local Government Tax Control Board of the State of Indiana Department of Local Government Finance. After an additional public hearing in Indianapolis, the Board also approved the bond issue. The bond sale to finance the settlement proceeded in mid June 2008, and the settlement funds then became available. During the time these various hearings were pending, the parties negotiated and executed a lengthy and detailed release/settlement agreement document that includes a structured settlement portion at Mr. Mayes' request.

## ANALYSIS

The issue on remand from the Court of Appeals is whether this Court is inclined to vacate the jury verdict and judgment as a condition of the settlement agreement negotiated pending the appeal. In this posture on remand, the Court is not bound by the exceptional circumstances test for vacatur applied by a court of appeals but rather must balance the equities of public and private factors to determine whether vacatur is appropriate. The Court finds that the unique factual circumstances of this case meet the requirements of both tests and that vacatur is appropriate under Federal Rule of Civil Procedure 60(b).

## A.  Standard for Vacatur as a Condition of Settlement Pending Appeal

In 1950, the United States Supreme Court established the "happenstance test" for vacatur of a judgment in a federal civil case rendered moot on its way to the Supreme Court or pending the Supreme Court's decision, explaining that "[t]he established practice of this Court . . . is to reverse or vacate the judgment below and remand with a direction to dismiss."  *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950).  The vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance."  *Id.* at 40.

In the context of vacatur on appeal as a condition settlement, however, the Supreme Court observed special judicial and public policy concerns and refined the test in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994).  In *Bonner Mall*, the Court was faced with the issue of the scope of its authority under 28 U.S.C. § 2106 to vacate, following settlement by the parties, a published decision of the Court of Appeals affirming a bankruptcy court's interpretation of the Bankruptcy Code in a manner contrary to the interests of the respondent–a vacatur request that was opposed by the petitioner.  The Court considered two primary equitable factors–the public interest in judgments and the economy of judicial resources–that according to the Court typically counseled against vacatur in the event of settlement.  Noting that "'[j]udicial precedents are . . . not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur,'" *id.* at 26-27 (quoting *Izumi Seimitsu Kogyo Kabushiki Katsha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)), and expressing concern that the availability of vacatur as a remedy on appeal might, in at least some cases, deter settlement at earlier stages in litigation, *id.* at 27-28, the Court held that "mootness by reason of

settlement does not justify vacatur of a judgment under review" by an appellate court except in "exceptional circumstances." *Id.* at 29.[1] The Court further expressed that "[i]t should be clear . . . that those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur . . . ." *Id.*

Providing an optional procedural vehicle for dealing with the request for vacatur on appeal, the Court counseled that "[o]f course, even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a district-court judgment may remand the case with instructions that the district court consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b)." *Id.* at 29. The Court observed that the authority vested in district courts pursuant to Rule 60(b) to vacate judgments and orders entered by them is separate and independent of the authority of appellate courts and the Supreme Court to "modify, vacate, set aside, or reverse" judgments or orders "brought to them for review" under 28 U.S.C. § 2106. *Bonner Mall*, 513 U.S. at 21, 29 (citing § 2106).

Federal Rule of Civil Procedure 60(b) grants district courts the authority to "relieve a party . . . from a final judgment" when "applying [the judgment] prospectively is no longer equitable" or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5), (6). Rule 60(b), and in particular its "catch-all" clause 60(b)(6), "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949). While, given the strong interest in finality of judgments, such relief is "extraordinary" and only available in "exceptional" circumstances, the discretion to make "case-by-case" assessments concerning the justice of granting a requested vacatur is squarely committed

---

[1] The Supreme Court held that the "exceptional circumstances" test applies not only to a case pending before the Supreme Court but also to cases before the federal courts of appeals.

to the sound discretion of the district court.  *See, e.g.*, *Pioneer Inv. Serv. Co. v. Brunswick* Assocs.,

507 U.S. 380, 393 (1993); *McCormick v. City of Chi.*, 230 F.3d 319, 327 (7th Cir. 2000).[2]

In light of the Supreme Court's reservation of the district court's authority to vacate on

remand even after an appellate determination that vacatur was inappropriate under exceptional

circumstances, *Bonner Mall* strongly indicates–as the Seventh Circuit recently noted in *Marseilles*

*Hydro Power LLC v. Marseilles Land & Water Co.*, 481 F.3d 1002 (7th Cir. 2007)–that the

"exceptional circumstances" test does not bind district courts considering Rule 60(b) requests for

vacatur of judgment on remand from an appellate court.  *Id.* at 1003-04.[3]  In *Marseilles*, the Seventh

Circuit cited with approval the Ninth Circuit's decision in *American Games, Inc. v. Trade Products.,*

*Inc.*, 142 F.3d 1164 (9th Cir. 1998), which affirmed a district court's decision to vacate even without

a "finding of 'exceptional circumstances,'" and held that district courts considering whether to grant

vacatur were free to balance the equities in the same manner that they had traditionally done

---

[2] Numerous district court decisions within the Seventh Circuit have recognized and exercised this discretion to vacate judgments, as the parties seek here, in light of or as conditions precedent to settlement.  *See, e.g.*, *Sumitomo v. Watkins Motor Line*, No. 03 C 2741, 2005 WL 1491555 (N.D. Ill. June 14, 2005) (vacating prior judgment pursuant to joint motion and settlement agreement); *Aptargroup, Inc. v. Owens-Illinois, Inc.*, No. 02-C-5058, 2003 WL 22303077 (N.D. Ill. Sept. 19, 2003) (vacating memorandum and order construing patent claim pursuant to joint motion and settlement agreement); *Budget Rent A Car Corp. v. G & M Truck Rental*, No. 03 C 2434, 2003 WL 23109766 (N. D. Ill. Dec. 22, 2003) (withdrawing memorandum opinion and order and dismissing action pursuant to joint motion and settlement); *Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.*, 913 F. Supp. 1088, 1147 (N.D. Ill. 1995), vacated pursuant to settlement ("Pursuant to the parties' Settlement Agreement and the Stipulation of the parties, [portions of opinions granting plaintiff's motion for partial summary judgment] are vacated pending dismissal of this action in its entirety by further agreement of the parties and therefore without the need of the Court to address reconsideration on the merits."); *Schulze v. Illinois State Police*, 764 F. Supp. 495 (N.D. Ill. 1990) (granting joint motion to vacate court's opinion that denied motions to dismiss ADEA and Illinois Human Rights Act claims).

[3] The court in *Marseilles Hydro Power LLC v. Marseilles Land & Water Co.*, 481 F.3d 1002, 1003-04 (7th Cir. 2007), also relied on Seventh Circuit Rule 57, which provides:

> A party who during the pendency of an appeal has filed a motion under Fed. R. Civ. P. 60(a) or 60(b), Fed. R. Crim. P. 35(b), or any other rule that permits the modification of a final judgment, should request the district court to indicate whether it is inclined to grant the motion.  If the district court so indicates, this court will remand the case for the purpose of modifying the judgment.  Any party dissatisfied with the judgment as modified must file a fresh notice of appeal.

7th Cir. R. 57.

pursuant to their Rule 60(b) authority. *Id.* at 1168–69 & n.1; *see also Marseilles*, 481 F.3d at 1003 (citing *American Games*, 142 F.3d at 1168-69).[4] As the court in *American Games* observed, "the fact-intensive nature of the inquiry required" in considering a request for Rule 60(b) relief renders it "appropriate that a district court should enjoy greater equitable discretion when reviewing its own judgments than do appellate courts operating at a distance." 142 F.3d at 1170.[5]

Accordingly, in exercising its discretion to determine whether or not to vacate the jury verdict and judgment in this case, the Court will be guided by the array of equitable factors of justice and hardship traditionally balanced by district courts in considering requests for Rule 60(b) relief and presented in this case, including the public interests in precedent, preclusion, and judicial economy and the circumstances, hardships, and interests of the private parties. In this position on

---

[4] In 1988 and prior to the Supreme Court decision in *Bonner Mall*, the Seventh Circuit had already taken a firm position of denying motions to vacate the opinion and judgment of a district court as a condition of settlement on appeal. *See In re Memorial Hosp. of Iowa County, Inc.*, 862 F.2d 1299, 1300 (7th Cir. 1988) (Easterbrook, J.) (publishing the opinion, when such decisions normally were unpublished, to explain the reason for the circuit's practice given that it was in conflict with the majority of other circuits addressing the issue). First, the court found that a settlement on appeal does not moot a case. *Id.* at 1301 (citing *Ringsby Truck Lines, Inc. v. W. Conference of Teamsters*, 686 F.2d 720, 721-22 (9th Cir. 1982)). The Seventh Circuit then rejected the position of other circuits that a court of appeals should automatically vacate a district court's judgment in order to promote settlements. *Id.* at 1302. The court was concerned with balancing the private interests of the parties involved in a given appeal with the effects of vacatur on judicial resources, precedent, and the preclusive effect of the judgment as to third parties. *Id.* The court recognized the frustration one party may experience when the court refuses to oblige this element of a settlement agreement but reasoned that the interests of individual parties fall within the larger judicial system, which requires orderly operation and reliance on precedent in future cases. *Id.* at 1303. Ultimately, the court held that the parties in *Memorial Hospital* were not free to contract about the existence of the underlying decisions. The court did not discuss the possibility of the district court effectuating the vacatur on remand, the procedure later established in *Bonner Mall*.

[5] While indicating that it would follow the approach taken by the Ninth Circuit in *American Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164 (9th Cir. 1998), the Seventh Circuit in *Marseilles* also noted that it was declining to follow the Fourth Circuit, which had adopted the exceptional circumstances test. *See Marseilles*, 481 F.3d at 1003 (noting the contrary authority of *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116-21 (4th Cir. 2000)). Prior to *Marseilles*, various district courts within the Seventh Circuit followed the Fourth Circuit and applied the exceptional circumstances test to requests for vacatur. *See, e.g., The Chamberlain Group, Inc. v. Interlogix, Inc.*, No. 01 C 6157, 2004 WL 1197258, at *2 (N.D. Ill. May 28, 2004); *Nilssen v. Motorola, Inc.*, Nos. 93 C 6333, 96 C 5571, 2002 WL 31369410, at *2 (N.D. Ill Oct. 21, 2002); *Pivot Point Intern., Inc. v. Charlene Prods., Inc.*, No. 90 C 6933, 2002 WL 1484488, at *1 (N.D. Ill. July 10, 2002) (Easterbrook, J., sitting pursuant to Local General Rule 2.30(E)).

remand, this Court is not cabined by the "exceptional circumstances" standard for a request for vacatur made to an appellate court.

## B. Balancing the Equities

While this case is currently pending on appeal, the parties jointly seek vacatur of the $9 million jury verdict and judgment against Defendants City of Hammond and Michael Solan and in favor of Mr. Mayes. The vacatur is requested as a condition of the settlement agreement reached by the parties that would pay Mr. Mayes $4.5 million in a structured settlement. In their joint brief, the parties submit that, regardless of whether the Court conducts an equitable balancing pursuant to its Rule 60(b) discretion, or instead looks only to the "exceptional circumstances" standard described in *Bonner Mall*, a decision to grant vacatur would be supported. The Court agrees, finding that the facts of this case justifying vacatur when balancing the equities also constitute "exceptional circumstances."

In balancing the equities of the public and private concerns implicated by such a vacatur, the Court considers on the one hand (1) the lack of any effect on the precedential value of this Court's pretrial opinion and order denying in part Defendants' motions for summary judgment, the preclusive effects, if any, that could in actuality attach to the judgment, and the public interest in the time and energy expended by the jury and the court in arriving at the verdict and judgment; and on the other hand (2) the private interests of the parties in Mr. Mayes' current physical and economic imperilment while awaiting resolution of this matter and his interest in vindicating his wrongful incarceration, as well as the City of Hammond's unique posture as a governmental entity with singular legal, political, and financial constraints.

*1. The public interests weigh in favor of allowing vacatur*

As the Supreme Court expressed in *Bonner Mall*, and as the Seventh Circuit had previously opined in *Memorial Hospital*, the request to vacate a district court judgment in connection with settlement of an action raises issues of public interest, including the effect of such vacatur on the precedential and preclusive effects of the judgment in question and the implications for such vacatur on past and future judicial resources. *See Bonner Mall*, 513 U.S. at 26 (stating that "[a]s always when federal courts contemplate equitable relief, our holding must also take account of the public interest," and that vacatur of judgment "disturb[s] the orderly operation of the federal judicial system" which "the public interest requires . . . to be honored when they can");*In re Memorial Hosp. of Iowa County, Inc.*, 862 F.2d 1299, 1302 (7th Cir. 1988) (Easterbrook, J.) (counseling against settlement that "squanders judicial time that has already been invested," and noting that "[p]recedent, a public act of a public official, is not the parties' property. . . .  To the extent an opinion permits the invocation of *Parklane*, it may have great value to strangers–a value that one or another party to today's case may try to appropriate in the settlement, but which is not theirs to sell.").

However, as courts in the Seventh Circuit and elsewhere have noted, in circumstances where vacatur does not diminish the effect of judicial precedent or does not unduly impinge on judicial resources, the public interests cited by *Bonner Mall* are diminished and vacatur is appropriate.  *See*, *e.g.*, *Microsoft Corp. v. Bristol Tech., Inc.*, 250 F.3d 152, 155 (2d Cir. 2001) (finding "exceptional circumstances" to grant vacatur of a district court opinion based, in part, on its limited precedential value); *Gould v. Bowyer*, 11 F.3d 82, 84-85 (7th Cir. 1993) (approving vacatur of decision by district court and noting limited precedential authority of district court opinion); *BMC, LLC v. Verlan Fire*

*Ins. Co.*, No. 04-CV-0105A, 2008 WL 2858737, *2 (W.D.N.Y. July 22, 2008) (holding that "the public's interest in preserving" the orders to be vacated is "minimal" because the orders themselves "do not involve novel or controversial applications of the law" and that "the Orders are not 'final' in the sense that [plaintiff] may still appeal the Orders to the Circuit Court"); *Automobile Club of S. California v. Mellon Bank (DE) Nat'l Ass'n*, 224 F.R.D. 657, 659 (C.D. Cal. 2004) ("In view of the resources already expended by both parties in litigating the instant dispute, in addition to the agreement reached before the Mediator, there appears to be little chance of relitigation. Because the settlement is final, the effect of res judicata is of secondary importance. Moreover, the instant action involved a fact specific contract formed under Delaware law. As a result, there is little precedential value in the Opinion and Order at issue.").

Here, the parties seek vacatur only of the jury verdict and final judgment but not, critically, of any prior opinions or orders of the Court, including its summary judgment decision. In addition, the potential preclusive effect of the judgment is so unlikely that it does not counsel against vacatur. Finally, the public and judicial resources in this case will not have been squandered as a result of vacatur; rather, the vacatur guarantees that the liability imposed by the jury on Defendants is respected and the financial award to Mr. Mayes is effectuated.

   a.   The parties' request for vacatur of the jury verdict and judgment does not diminish the effect of this court's summary judgment decision

Vacatur of the jury verdict and judgment in this case would have no effect on the precedential and other values of this Court's decision denying in part Hammond's motion for summary judgment, *Mayes v. City of Hammond, et. al.*, 442 F. Supp. 2d 587 (N.D. Ind. 2006). This decision will remain as an official decision of a United States court and will continue to be consulted

and cited, as it has already been on multiple occasions.[6]  The parties in this case are not seeking to vacate any published decisions of the court, but rather a judgment based on a jury verdict, which in and of itself has no precedential value.  Thus, the concern expressed in *Bonner Mall* that "judicial precedents are . . . not merely the property of the private litigants," 513 U.S. at 392, has no application here.  A number of cases concerned by the effect vacatur would have on precedent, including *Bonner Mall* and *Memorial Hospital* and district court cases within the Seventh Circuit, can be distinguished on this important basis as the parties in these cases were seeking to vacate orders or published opinions which contained substantive constructions of the law.  *See, e.g.*, *Bonner Mall*, 513 U.S. at 26 (seeking to vacate a decision of the court of appeals construing trademark law); *Memorial Hospital*, 862 F.2d at 1301 (seeking to vacate a district court order and opinion concerning a bankruptcy court contempt finding).[7]

        b.        The judgment in this case is unlikely to have any issue preclusion effect beyond Mr. Mayes' case

One of the main criteria to be examined by this court in determining whether to vacate the prior judgment is the effect, if any, of the judgment on litigants, other than the parties, in separate cases.  In this case, Hammond admits that it is concerned about the potential preclusive effect of the judgment in a possible suit brought by James Hill, a nonparty to the instant action.  However, given

---

[6] *See, e.g., Bregin v. Liquidebt Sys.*, No. 1:06-CV-23, 2008 WL 150611, at *8 (N.D. Ind. Jan. 14, 2008); *Hansen v. Bd. of Trs.*, No. 1:05-CV-670, 2007 WL 3091580, at *6 (S.D. Ind. Oct. 19, 2007); *Santiago v. City of East Chicago*, No. 2:05-CV-282, 2007 WL 1876402, at *1 (N.D. Ind. June 26, 2007); *Hardiman v. Davita Inc.*, No. 2:05-CV-262, 2007 WL 1395568, at * 8 (N.D. Ind. May 10, 2007); *Humphrey v. Burgos*, No. 2:06-CV-45, 2007 WL 1341045, at *3 (N.D. Ind. May 3, 2007).

[7] *See also The Chamberlain Group, Inc. v. Interlogix, Inc.*, No. 01 C 6157, 2004 WL 1197258, at *1 (N.D. Ill. May 28, 2004) (seeking to vacate substantive summary judgment decision on patent claim construction); *Nilssen v. Motorola, Inc.*, Nos. 93 C 6333, 96 C 5571, 2002 WL 31369410, at *2 (N.D. Ill Oct. 21, 2002) (same); *Allen-Bradley Co. v. Kollmorgen Corp.*, 199 F.R.D. 316, 317 (E.D. Wis. 2001) (same); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, No. 90 C 6933, 2002 WL 1484488, at *1  (N.D. Ill. July 10, 2002) (Easterbrook, J., sitting pursuant to Local General Rule 2.30(E)) (seeking to vacate substantive summary judgment order concerning copyright).

the facts concerning Mr. Hill's case, the likelihood that the judgment in this case would have any issue preclusion (or collateral estoppel) effect in any case other than this one is minimal to the extent that it should not prevent the requested vacatur.

Mr. Hill was Mr. Mayes' codefendant in the underlying criminal case and was also convicted (in a separate trial). Mr. Hill, like Mr. Mayes, was identified by the victim. However, the victim also testified that Mr. Hill did not ejaculate, and thus, unlike for Mr. Mayes, there were no bodily fluids to test and so there is no DNA exclusion for Mr. Hill. He has served his sentence and has been released. The parties represent that Mr. Hill currently has a post-conviction petition pending in Indiana state court, where he is alleging that his conviction should be vacated because of the failure of the police to disclose that the victim was hypnotized. The State is contesting his right to post conviction relief.

Issue preclusion, also sometimes referred to as collateral estoppel, "generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001) (citing Restatement (Second) of Judgments §§ 17, 27, pp. 148, 250 (1980); D. Shapiro, Civil Procedure: Preclusion in Civil Actions 32, 46 (2001)). When a party attempts to rely on issue preclusion, the burden is on that party to prove four elements:

> (1) The issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must have been fully represented in the prior action.

*H-D Michigan, Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007) (quoting *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994)); *see also Chicago Truck Drivers, Helpers & Warehouse*

*Union Pension Fund v. Century Motor Freight*, 125 F.3d 526, 530 (7th Cir. 1997). Where a judgment is ambiguous and it is not possible to definitively determine what issues were decided, issue preclusion cannot apply. *See La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 907 (7th Cir. 1990). Issue preclusion is an equitable doctrine, *see Evans v. Katalinic*, 445 F.3d 953, 956 (7th Cir. 2006), and even if all of the criteria are satisfied, a court has the discretion not to allow unfair use of the doctrine, *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979) (holding that district courts enjoy broad discretion whether to invoke offensive collateral estoppel and should not do so where it would be unfair).

In the instant case, the only conceivable circumstance in which the jury verdict and judgment in *Mayes v. City of Hammond* could have issue preclusive effect is possible future civil litigation by Mr. Hill against the City of Hammond. Because of the significant differences between the cases of Mr. Hill and Mr. Mayes, as set forth below, and because Mr. Hill has apparently not yet even succeeded in overturning his conviction, the potential for Mr. Hill to successfully invoke nonmutual offensive collateral estoppel[8] is slight and does not outweigh the other factors weighing in favor of vacatur in this case.

In the event that Mr. Hill is successful in overturning his conviction, there is a possibility that he will bring a civil suit seeking to recover for his imprisonment, which he alleges was wrongful.[9]

---

[8] Nonmutual offensive collateral estoppel is used by a plaintiff to preclude a defendant from relitigating an issue it previously litigated and lost in another action against a different plaintiff. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 4, 329 (1979).

[9] Vacation of the underlying criminal conviction is a necessary precondition to Mr. Hill bringing a civil suit because

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for

In such a suit, it appears that he would be unable to rely on any findings by the jury in Mayes' case as to specific constitutional violations, since the facts in his case are substantially different. First, there is no DNA exclusion for Mr. Hill, since the person the victim identified as Mr. Hill did not ejaculate and no serological evidence was offered at his original trial. Additionally, two of the three constitutional violations alleged by Mayes–(1) the failure of Police Officers Townsell and Solan to record and produce the fact that the victim's initial photographic identification was "tentative" and (2) that the identification was arrived at when the victim was shown a photo display that contained multiple photographs of Mr. Mayes in a group of six photographs–have no relevance to Mr. Hill. The parties represent in this motion that Mr. Hill's photograph was not selected until several weeks later and that the use of that photo array appears to have been properly documented.

As to Mr. Mayes' third alleged constitutional violation of undisclosed use of hypnosis, Mr. Hill may have a potential claim in relation to the hypnosis of the victim since that was not disclosed in his case. However, because of the alternate theories offered by Mr. Mayes at his civil trial and also because of the differing factual scenarios of the two cases, it is unlikely that issue preclusion as to the use of hypnosis would apply in Mr. Hill's potential case. In the instant case, Mr. Mayes argued to the jury that three separate pieces of exculpatory evidence were not disclosed to him–the hypnosis, the circumstances of the initial photographic identification procedure, and that the identification was merely "tentative." Thus, the Court instructed the jury:

> [Plaintiff] claims that individual detectives in the Hammond Police Department, including the Defendant Michael Solan, who was then a lieutenant, and a sergeant, Robert Townsell, violated his constitutional right to a fair trial by knowingly failing to document and disclose to the prosecutor material exculpatory and impeachment

---

damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.
*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

evidence. Larry Mayes contends that there was a failure to disclose three items of evidence. First, that Robert Townsell failed to disclose a hypnosis and/or relaxation session designed to assist the victim, Lisa Jaynes, in recalling the events of the crime, including the faces of her assailants. Second, that Robert Townsell and/or Michael Solan failed to disclose the fact that Lisa Jaynes' first identification of Larry Mayes was tentative. And third, that Robert Townsell engaged in multiple, unduly suggestive identification procedures that were not documented and some of which were not disclosed. Larry Mayes claims that these three items of evidence, taken *individually or together*, undermined the evidence presented against him at his criminal trial, undermined confidence in the verdict against him, and caused him to be wrongfully convicted. If you find there was *any violation* of Larry Mayes' right to a fair trial either by Robert Townsell or Michael Solan, you will then need to determine whether the constitutional violation was caused by a custom or practice of the Defendant, the City of Hammond, and/or by Michael Solan's failure to supervise Robert Townsell in this case.

Tr. 11-216-17 (emphasis added). The jury in this case was never asked to decide which one or more of the pieces of allegedly exculpatory evidence were established by Mr. Mayes or which it found had not been disclosed. It is therefore impossible to know from the verdict in the case what the jury decided with respect to each of the three instances of exculpatory evidence. The jury could have found in favor of Mr. Mayes solely with respect to the initial photographic identification, finding that the hypnosis session was merely a relaxation technique, as argued by the defendants, and that it did not need to be disclosed to Mr. Mayes since it was not material exculpatory evidence. If that was what the jury decided, there could be no possibility of issue preclusion as Mr. Hill's photograph was not included in the photo array from which the victim picked Mr. Mayes' photograph. While it is possible that the jury did decide that the hypnosis session occurred as alleged by Mr. Mayes and should have been disclosed, such a finding was not necessary for the jury to decide that there was a constitutional violation in Mr. Mayes' case.

Because of the significant factual differences in the cases of Mr. Mayes and Mr. Hill, and because Mr. Mayes' *Monell* policy case against Hammond was so tightly linked to the facts in his

own case, it is also unlikely that Mr. Mayes' success on his *Monell* policy claim against Hammond could be used by Mr. Hill for issue preclusion in his own possible case, if he is ever able to bring one. First, there is no doubt that even if Mr. Hill were able to establish such a policy of the City of Hammond, he would have to prove that this policy caused the constitutional violations which he alleged in his own case. Thus, the jury in Mr. Mayes' case was instructed that, in order to enter a verdict against Hammond, it must find that:

> 2, . . . the Hammond Police Department had a policy, custom, or practice of failing to adequately train or supervise detectives concerning documenting basic investigative activities which led to the failure to reveal exculpatory evidence in this case. And 3, Frank Dupey knew that more and/or different training and supervision was needed to avoid the problem of criminal investigators failing to document and disclose exculpatory evidence or that in the proper exercise of Frank Dupey's official responsibilities, the need for more training or supervision on these issues was obvious. And 4, the City's failure to provide adequate training and supervision on these issues proximately caused the violation of Larry Mayes' constitutional right to a fair trial.

Tr. 11-221–222. Since the jury was never asked to determine what piece(s) of exculpatory evidence it found existed and was (or were) not disclosed (as explained above), it is impossible to know precisely what policy it found that caused the failure to disclose this evidence. Thus, if the jury found that the only piece of exculpatory evidence that was not disclosed was the circumstances of the photographic identification, the additional finding by the jury that it was Hammond's policy, custom, or practice that caused this failure to disclose could never have any application to Mr. Hill, since he does not appear to have any claim relating to a photographic identification. Although the jury undoubtedly found that the Hammond Police Department had a policy, custom, or practice of failing to adequately train or supervise detectives, it is difficult to see how this finding could be separated from the underlying constitutional violations alleged so as to render it a sufficiently

precise finding by the jury to be accorded preclusive effect, in the event that Mr. Hill were to bring a lawsuit.

Additionally, it is unlikely that there could be any collateral estoppel effect as to causation because the jury's verdict in this case was directly tied to the constitutional violations that Mr. Mayes alleged, which are different from those which Mr. Hill could possibly allege. On the other hand, even in the absence of a judgment that would entitle him to argue issue preclusion, Mr. Hill would still be able to use the various admissions by Hammond Police Department personnel in this case, including Dupey, which Mr. Mayes used to establish Hammond's liability, and would also be able to use this Court's ruling on summary judgment as a guidepost to establishing a policy claim against Hammond.

Normally, Hammond's desire to eliminate the possibility that Mr. Hill may be able to use nonmutual offensive collateral estoppel if he were ever to bring a suit relating to his own conviction and imprisonment would weigh against vacatur. However, it appears so unlikely that Mr. Hill would ever be able to satisfy his burden of demonstrating precisely what the jury in this case found and establishing what precise issues should be precluded in his own lawsuit, that the potential preclusive effect of this case is not a significant factor for the Court in determining whether to vacate the jury verdict and judgment.

In addition to the above, Defendant Hammond argues that it is the very complexity and detail of the differences between the investigation, evidence, trial, conviction, civil claims and verdict regarding Mr. Mayes, when compared to the investigation, evidence, trial, conviction and hypothetical civil claims regarding Mr. Hill, which demonstrate the City of Hammond's need for vacatur. Eliminating issue preclusion as an argument for Mr. Hill will be lengthy and expensive for

Hammond in any potential future litigation with Mr. Hill absent the requested vacatur. Likewise, whether a future judge and/or jury will agree with Hammond and Mr. Mayes regarding the inapplicability of issue preclusion is unknown and unpredictable. Conversely, vacatur provides Hammond with the certainty of outcome as to the inapplicability of issue preclusion because there would be no final order in much the same fashion as would occur in a successful appeal. This predictability was one of the driving forces behind Hammond's decision to negotiate a settlement with Mr. Mayes, which at the same time allows for Mr. Mayes to receive a substantial monetary recovery.

c.     The public interest in the resources expended by the Court and the jury will be respected

As noted earlier, the judicial resources expended in issuing summary judgment and other rulings will not be wasted as the parties are not seeking vacatur of those rulings. However, the parties are requesting vacatur of the $9 million jury verdict and the resulting judgment, arrived at after weeks of trial and hours of deliberation by the jury. The public has an interest not only in the court resources spent in preparation for and over the course of the lengthy trial but also in the value of the time and energy dedicated by the individuals serving on the jury.

Fortunately, the efforts of the jury and the Court will be respected through the settlement in this case notwithstanding the technical result of vacatur. The parties represent that none of the steps (set forth in more detail below in Part 2.a.) taken by the City of Hammond to arrive at this substantial $4.5 million settlement nor the outcome of the proposed settlement itself, would have been possible without the guidance that has been provided by this Court, the jury through the verdict and judgment, and by the Court of Appeals at oral argument. The efforts of the litigants, the Court, the jury, and the Court of Appeals have been an invaluable resource in leading the parties to reach

19

at long last an amicable settlement that imposes fiscal responsibility on Hammond for the liability imposed by the jury.

From Hammond's perspective, the efforts of the Court and the jury will not be wasted or go unacknowledged by vacatur. To the contrary, allowing the parties to complete their settlement actually will give permanent effect to a balancing of the unique circumstances and interests involved in this litigation, a balancing which is reflected in the jury's verdict.[10] The settlement and its terms are of public record and, if consummated, the efforts of the Court and jury will be acknowledged in this different manner. The jury's verdict imposing liability on Hammond will be observed in that Hammond will pay Mr. Mayes $4.5 million under the settlement as a result of the verdict. The public good will be additionally served by providing a lesser and more predictable burden for the citizens of Hammond to bear as to Mr. Mayes' claim and an even footing to defend any hypothetical claim which may be brought in the future by Mr. Hill.

From Mr. Mayes' perspective, in addition to the arguments above that the verdict in this case would provide no or only a very limited basis for issue preclusion and that vacatur of the judgment will have no effect on the Court's published decision on the motions for summary judgment, the substantial outcomes achieved through this litigation will remain notwithstanding vacatur of the judgment and verdict. In light of the summary judgment decision and the evidence adduced through discovery and trial, Mr. Mayes believes that Hammond will face extraordinary political and legal hurdles in defending future cases implicating the same misconduct evidenced in this case, regardless of whether the verdict and judgment remain.

---

[10] To demonstrate the difficulty in assessing the potential outcome, one only need examine the difficulty the jury faced in reaching a verdict. The jury took Mr. Mayes' $18 million demand and Hammond's request for a defense verdict and split the difference at $9 million.

Given the uncertainties of an appeal and the significant sum of $4.5 million to be paid to Mr. Mayes under the settlement, the public interests in judicial economy and efficiency and in the jury's time and effort will be served by the vacatur to effectuate the settlement.

2. *The private interests of both parties weigh in favor of vacatur*

As courts that have considered motions for vacatur in connection with settlement have consistently recognized–both appellate courts in applying the *Bonner Mall* test and district courts acting pursuant to their Rule 60(b) authority–unique circumstances facing the parties, undue hardship that will result from denial of relief, and strong mutuality of interest in settlement can outweigh other interests and tip the balance in favor of finding "exceptional circumstances" and other equities to warrant vacatur. *See, e.g., Wal-Mart Stores, Inc. v. Rodriguez*, 322 F.3d 747 (1st Cir. 2003) (granting vacatur of preliminary injunction decision in Section 1983 action); *Major League Baseball Props., Inc. v. Pacific Trading Cards, Inc.*, 150 F.3d 149 (2d Cir. 1998) (granting vacatur of preliminary injunction decision in trademark case); *Motta v. District Director of INS*, 61 F.3d 117 (1st Cir.1995) (per curiam).[11] In this case, the parties face unique personal and institutional pressures and hardships that render vacatur an appropriate remedy and make timely consummation of the proposed settlement particularly critical.

---

[11] *See also Taylor v. Miller*, No. CIV-05-49-C, 2007 WL 927937 (W.D. Okla. Mar. 26, 2007) (granting vacatur of judgment including punitive damages in Section 1983 action against police chief for excessive force and related claims); *Doe v. United States Dep't of Labor*, No. Civ. A. 05-2449, 2007 WL 1321116 (D.D.C. Mar. 22, 2007) (vacating reported summary judgment decision in class action brought under Privacy Act); *Equal Access for All, Inc. v. Hughes Resort, Inc.*, No. 5:04cv178, 2006 WL 1313189 (N.D. Fla. May 12, 2006) (finding "exceptional circumstances" justifying vacatur of decision on motion to dismiss in consolidated ADA cases); *United Nat'l Ins. Co. v. Airosol Co. Inc.*, No. 99-1236, 2001 WL 34664157 (D. Kan. Feb. 21, 2001); *Novell, Inc. v. Network Trade Center, Inc.*, 187 F.R.D. 657 (D. Utah 1999); *Carter v. AT&T*, No. C-1-92-424, 1996 WL 656571 (S.D. Ohio Sept. 13, 1996).

a.      The Defendants' interests and hardships

Defendants assert that this case presents an unusual factual and legal setting.  Mr. Mayes'
claims arose from events that occurred more than twenty-five years ago having little to do with
present-day Hammond and its current police force.  Many city administrations have come and gone
since then.  Several of the key persons involved in those events are deceased and then-Chief Frank
Dupey, Lt. Michael Solan, and Raymond Myszak all are retired.  However, it is the present-day
citizens of Hammond who have been called upon to address the issues presented by Mr. Mayes'
claims.

As a municipality, Hammond is unlike private litigants in that weighing the hypothetical
risks of settling verses defending litigation implicates the citizens at large, including the financial
costs of continued provision of police and fire services, proper roads, sidewalks, bridges, and other
vital community services.  These ongoing demands that Hammond owes to its citizens, if unmet,
result in far more than the loss of an investment, as in the case of a private corporation.  In
evaluating this highly unusual case, with the potential results on appeal of no liability or a loss in
the millions of dollars, Hammond expresses a heightened need for a more tangible means of
determining what burden, if any, to ask the present-day citizens of Hammond to bear.

In a process that does not occur in most of its litigation, Hammond represents that its elected
representatives have undertaken several steps in this case to seek public acceptance of the still
sizeable burden imposed upon the municipal budget by Hammond's $4.5 million settlement with
Mr. Mayes. After the Mayor and Corporation Counsel mediated with Mr. Mayes' attorneys and
reached a conditional settlement, the conditional settlement was subjected to the political process.
The Hammond Common Council drafted two ordinances, one to approve the settlement itself and

the other to authorize the issuance of a bond sale to provide the necessary public funds for the settlement. The two ordinances then were read on three occasions at public hearings before the Hammond Common Council and they eventually were passed. In addition, the bond issue was approved after a separate public hearing before the Local Government Tax Control Board of the State of Indiana Department of Local Government Finance. The bond sale to finance the settlement proceeded in mid-June of 2008 and the settlement funds then became available. Thus, the citizens of Hammond and their elected representatives chose to undertake this lengthy public political process and to ultimately accept this fiscal burden.

In terms of its current litigation risk, Hammond believes that its police force was properly trained and supervised and that it did not violate Mr. Mayes' civil rights. Should Hammond prevail on appeal, either judgment entered by the Court of Appeals in its favor will replace outright the current verdict and judgment *or* a new trial will undo the verdict and perhaps certain legal rulings. But Hammond acknowledges that it has no guarantee of prevailing and that is why Hammond through the terms of the settlement has given up its opportunity to be vindicated by a reversal of the verdict and judgment, including the impact that a Court of Appeals' opinion in Hammond's favor would have upon any hypothetical claim brought by Mr. Hill in the future.

The interests and hardships of the City of Hammond are in favor of vacatur.

b.       The Plaintiff's hardships and interests

Given that vacatur of the judgment and verdict in this case would have little impact on third parties and would still respect the jury's finding of liability and grant of a substantial monetary award to Mr. Mayes, the Court finds that Mr. Mayes' current hardships, as articulated in the affidavit

of his Attorney Nick Brustin and detailed below, weigh in favor of vacatur and constitute exceptional and compelling circumstances justifying the relief sought.

From Mr. Mayes' perspective, the $4.5 million settlement, although a compromise, sends a resounding message not only to Hammond but to all municipalities concerning the ramifications of the type of individual and systemic misconduct evidenced in this case. Mr. Mayes and his attorneys believe that the proposed settlement, which is unequivocally grounded in the verdict, will substantially advance the important policy goals of Section 1983 litigation, including the goal of deterrence. Moreover, in light of the Supreme Court's concern in *Bonner Mall* that some parties may be deterred from settling prior to trial if vacatur is available as a condition of settlement on appeal, this $4.5 million settlement is not an amount of money that casts "settlement after trial" as a worthwhile gamble for municipalities, particularly in a highly publicized case such as this in which the City has also spent a great deal of money on attorneys' fees. While Mr. Mayes continues to disagree on the merits, he represents that he has come to understand the difficulties faced by the City in settling this matter. His attorneys represents that they "have no doubt, that given the financial limitations of Hammond and the multi-tiered decision making structure, a pre-verdict settlement would have been implausible as would any settlement that did not vacate the judgment and verdict." Joint Br., at p. 24.

More importantly in the balancing of the equities, Mr. Mayes' attorney argues that "there is no doubt that the proposed settlement has become an absolute necessity for Mr. Mayes." *Id*. Mr. Mayes has suffered and continues to suffer extraordinary hardships that independently justify vacating the verdict and judgment in this case. Acknowledging their primary responsibility to ensure that Mr. Mayes be compensated for the harms he suffered and continues to suffer today and

the preference to keep the verdict and judgment intact, counsel for Mr. Mayes represents that, given Mr. Mayes' current circumstances, he is not in a position to reject this hard fought settlement.

Mr. Brustin asserts that, as evidenced by the jury's verdict and the proposed settlement, Mr. Mayes suffered tremendously as a result of defendants' constitutional violations. For those who have been wrongfully incarcerated for many years like Mr. Mayes, simply surviving the course of the litigation process is an overwhelming challenge given the extent of their emotional and physical damages. Mr. Mayes, in particular, has barely survived, and his current situation is apparently even more dire than may have appeared at the time of trial two years ago.

The following information concerning Mr. Mayes' current situation is taken from Mr. Brustin's affidavit. After 19 years in a maximum security prison for a crime for which he has been exonerated, and in light of related health issues, Mr. Mayes has had trouble working steadily and earning a subsistence living. These problems have only increased since trial as a result of health issues. During these seven years, he has been forced to rely on the charity of friends and family, all of whom are living at a subsistence level themselves, and on odd jobs. Although he is engaged to and has been living with Candy Lucas and her two children, he has not been able to properly provide for them and for many years they have all been living in extreme poverty. A few years ago, they were evicted from their home in one of the most dangerous sections of Gary, Indiana, and are constantly being threatened with eviction from their current home. More recently, they have been unable to pay their rent for a number of months and live in constant fear of eviction. Mr. Mayes and his family have been the victims of home break-ins and numerous acts of vandalism. Their electricity has been turned off by the electric service provider on a number of occasions and their car repossessed.

In addition to his inability to provide for himself and his family and the attendant emotional distress, Mr. Mayes' health has deteriorated steadily. Although he is only 59 years old, the life insurer that funded Mr. Mayes' proposed structured annuity classified him as 76 years old for purposes of life contingency annuity payments. In other words, the life insurer determined that he has the life expectancy of an average 76 year old person rather than someone who is only 59.[12]

Because of his financial, health, and related issues, Mr. Mayes has also undertaken a series of high interest litigation loans, against advice of counsel. As part of the settlement, counsel expended significant effort and were successful in negotiating reduction on the repayment owed, but in the event the settlement falls through, the amount due on these loans will increase exponentially.

Counsel for Mr. Mayes have expressed grave concerns that he cannot withstand the year or more it might take for a final judgment, a new trial should it become necessary, or the risk of an outright reversal. The current settlement is based upon an assessment of what Mr. Mayes can rely on to support himself and his family for his remaining years after repaying his debts. As suggested above, a large portion of the settlement proceeds due Mr. Mayes has been allocated to a structure which will provide him an income for the rest of his life and to his family should he die before the end of the structure period.

Accordingly, the individual interests and hardships of Mr. Mayes weigh in favor of vacatur of the jury verdict and the judgment so the settlement can be consummated.

---

[12] The affidavit of the life insurer is attached to the joint brief.

*3. Conclusion*

The combined weight of all of the equities, both public and private, tip the balance overwhelmingly in favor of granting the joint request for vacatur of the jury verdict and judgment in this case. The single public consideration of preclusion that weighs against vacatur, a consideration that is often given great weight in other circumstances, is so unlikely to arise here that it does not alter the balance of the scales.

In addition, the Court finds that the uniquely difficult circumstances of Mr. Mayes' current life, the City of Hammond's financial situation, the "amicable" settlement agreement, the joint nature of the request for vacatur, the precedential value of this Court's unscathed summary judgment rulings, and the lack of any significant public concern mitigating against vacatur constitute exceptional circumstances favoring vacatur.

So ORDERED this 15th day of August, 2008.

s/ Paul R. Cherry _____
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    United States Court of Appeals for the Seventh Circuit
       All counsel of record